ELLA M. THROWER et al., Respondents, v JOHN J. SMITH et al., Respondents; ISIDORO PEREZ, Appellant.

Second Department, July 3, 1978

## APPEARANCES OF COUNSEL

*A. Paul Goldblum* for appellant.

*Jacob Bromberg* for Ella M. Thrower and another, respondents.

*Raymond J. MacDonnell (Philip Hoffer* of counsel; *Rose L. Hoffer* and *Peter T. Affatato* on the brief), for Max Berens, respondent.

## OPINION OF THE COURT

TITONE, J. P.

This is a personal injury action arising from a chain collision of four automobiles. Plaintiffs, Charles Thrower and his wife, Ella Mae Thrower, occupied the lead or first car. Defendant Smith owned and operated the second vehicle, defendant-appellant Perez, the sole defendant found liable, operated the third vehicle and defendant Berens, who was deceased at the time of the trial, operated the fourth vehicle.

### TRIAL EVIDENCE AND RULINGS

The evidence adduced at the trial revealed that the parties were proceeding easterly in stop-and-go traffic on the Belt Parkway on Saturday, April 17, 1971, at about 9:00 P.M. Plaintiff Charles Thrower testified that he brought his car to a halt about three or four feet behind the car in front of him; 10

seconds later he heard a crash and then defendant-respondent Smith's vehicle hit the rear of his vehicle. Similarly, Smith testified that his vehicle was hit and that the impact from his rear caused his vehicle to hit the Thrower vehicle. Defendant-appellant Perez testified that he stopped his car behind Smith's and 10 seconds later the rear of his car was struck, causing it to strike the Smith vehicle. Masha Berens, the wife of deceased defendant-respondent Max Berens, testified that she was seated next to her husband and another couple was seated in the rear; that traffic was very heavy; and that they were proceeding to a wedding and were about 15 or 20 minutes late. With respect to the accident she stated she heard a noise like a "bang" and her husband "tried like stopped, like short-stopped" and "touched it" (the Perez vehicle).

On cross-examination of Mrs. Berens, Smith's attorney introduced the motor vehicle accident report filed by her deceased husband which stated: "Car number 3 [Perez] stopped short of my car, therefore hit three, was behind him and impossible to stop my car." (Bracketed matter supplied.) The trial court, over the objection of defendant Berens' counsel only, allowed the report in evidence on the ground that the "admission is independent of anything that this witness [Mrs. Berens] testified to. It has nothing to do with what the witness is saying." (Bracketed matter supplied.)

[It may reasonably be assumed from the afore-mentioned remark by the trial court, that it allowed Berens' statement in evidence solely as an admission against his interest. This is further evidenced by the fact that earlier, when plaintiff Charles Thrower's motor vehicle report was allowed in evidence by the court at the request of Berens' attorney, the attorneys for both Smith and appellant indicated that it should be considered binding only as to Thrower. The trial court concurred by stating: "Naturally, this is his report, it's only binding on him * * * Naturally, it's not binding on anybody else except him. How could he bind somebody else?"]

### INSTRUCTIONS TO JURY

During its instructions to the jury, the trial court charged the following: "Now, you heard the testimony concerning the two Motor Vehicle Reports. Those Motor Vehicle Reports have been received in evidence and they are part of the proof in the case. The Motor Vehicle Report of Charles Thrower *was part*

*of his version of how the accident happened, and the Motor Vehicle Report of Max Berens was for the purpose of showing his explanation of how the accident happened."* (Emphasis supplied.)

To such charge, appellant Perez' attorney excepted with the following observation: "Your Honor, I believe, charged this jury that that report was entered into evidence for the purpose of showing his explanation of how this accident happened * * * that is not the reason this was offered into evidence whatsoever. Any writings on there, as far as an explanation of this accident * * * has no bearing as against the others—in particular, my defendant, who not only did not offer this document in but was not privy to making it."

Later the trial court charged the jury, with respect to each defendant, that if the plaintiffs failed to show that each named defendant was negligent, it *was to deliberate no further and return a verdict in favor of such defendant.* It then also added that before plaintiff Charles Thrower was entitled to a verdict, *"In addition to showing negligence he must go one step further and show that he himself was free from contributory negligence"* (emphasis supplied). However, very shortly thereafter, the trial court submitted four questions to the jury, each to be answered either "yes" or "no". The first three were whether plaintiffs had shown a respective defendant was negligent and the fourth whether plaintiff Charles Thrower had shown he was free from contributory negligence. At no time before, during, or after submission of the four questions, did the trial court advise the jury not to consider the fourth question once it found that plaintiffs had failed to show that any of the defendants had been negligent.

### VERDICT

Initially the jurors returned with answers to the four questions, in which they indicated that the plaintiff did not show that any of the defendants were negligent and that plaintiff did show that he was free from contributory negligence. The trial court then directed the jury to resume deliberations on the ground that since it held that plaintiff Charles Thrower was not contributorily negligent, it follows that the jury meant that his car had been stationary at the time it was struck and thus he was not responsible for the accident. That being the situation, one or two or more of the other drivers were negligent. Pursuant to such direction, the jury, by unani-

mous vote, held that of the three defendants, appellant Perez alone was negligent and that his negligence was the proximate cause of the accident.

### DISCUSSION AND DETERMINATION ON APPEAL

■ In my opinion the trial court erred when it instructed the jury that, *inter alia,* the Berens accident report was admitted to show his version of how the accident occurred. The report, being properly certified, was receivable in evidence either as an admission by the deceased defendant, or as a declaration against his interest, or both (cf. *Carter v Castle Elec. Contr. Co.,* 26 AD2d 83, 84; *Welde v Wolfson,* 32 AD2d 973; *Geminder v Zauderer,* 8 AD2d 703). His statement that his vehicle hit the Perez vehicle in the rear, was in contradistinction to his wife's trial testimony that such impact was no more than a mere "touch" (cf. *Welde v Wolfson, supra).*

Although the whole statement in Berens' motor vehicle report had to be admitted in order to allow the party to explain the admission by its context, and for other incidental and collateral facts and circumstances mentioned therein (see Richardson, Evidence [Prince, 10th ed], §§ 227, 263), it was not admissible for the truth of its contents. Since it went to the heart of the issue and was requisitioned by the jury after it resumed deliberations following its initial findings, *inter alia,* that all defendants were free from negligence, it seems obvious that the erroneous charge, duly excepted to by appellant Perez, improperly influenced the jury in reaching a verdict against appellant (cf. *Borsella v Wickham Bros.,* 6 AD2d 784). Accordingly, on this error alone, a new trial is mandated.

■ The trial court also committed reversible error in first directing the jury to consider the issue of plaintiff Charles Thrower's possible contributory negligence, only if it found that one or more of the defendants were negligent, and immediately thereafter instructing it to answer three questions as to the negligence of the defendants and a fourth as to plaintiff Charles Thrower's contributory negligence without qualification. The second direction was clearly inconsistent with the former and undoubtedly confused the jury during its initial deliberations (see *Hartly v American Reciprocal Insurers,* 21 AD2d 761; *Schafer v Norwood Equip. Corp.,* 277 App Div 933; *Dea v City of New York,* 258 App Div 121).

■■ I am also of the opinion that, under the circum-

stances, the trial court seriously erred in directing the jury to resume deliberations after it refused to accept that body's findings on the issues of negligence and contributory negligence. Conceivably the trial court might have been justified had it ordered a new trial on the ground that such findings, in effect a verdict that none of the defendants was liable, was against the weight of the evidence (see CPLR 4404, subd [a]; *Hogeboom v Protts,* 30 AD2d 618; *Jones v Kent,* 35 AD2d 622). However, the trial court should not have resubmitted the case to the jury without taking steps to correct the confusing, conflicting and patently erroneous instructions it initially gave that body. To obviate an erroneous instruction on a material point, it must be withdrawn and corrected in such explicit terms as to preclude an inference that the jury might have been influenced by it (see *Smulczeski v City Center of Music & Drama,* 3 NY2d 498; *Wunderlich v Hipper,* 35 AD2d 733; *Tropp v Equitable Life Assur. Soc. of U. S.,* 180 Misc 1072).

Finally, in the circumstances of this case, where there was a multiple accident involving allegations of sudden stopping and following too closely, the trial court should have charged on the duties of each following driver (see Vehicle and Traffic Law, § 1129, subd [a]; 1 PJI, 2:82, 2:83). Despite counsel's failure to request such charges, the need to give them was apparent and they should have been given in the interest of justice.

Accordingly, for the above reasons, I conclude that the judgment against appellant should be reversed and a new trial granted as to all the parties to the litigation.

SHAPIRO, J. (dissenting). For the reasons which follow, I vote to affirm the judgment appealed from.

### THE FACTS

On Saturday, April 17, 1971, at about 9:00 P.M. plaintiff Charles Thrower was driving his automobile easterly on the Belt Parkway. His wife, plaintiff Ella Mae Thrower, was a passenger. Traffic was heavy and moving very slowly, at about 15 miles per hour, with frequent stops. He testified that the traffic conditions required him to proceed at about 5 or 10 miles an hour as he approached the Farmers Boulevard exit; that he stopped about three or four feet behind the car preceding him; and that about 10 seconds later he heard a crash behind him and "[t]he next thing I knew I was hit" by a heavy impact. On direct examination he stated that his car

was struck only once, but on cross-examination he admitted that he did not know how many times his car was struck.

The defendants are the owners and operators of the three vehicles behind him in the following order: Smith (hereafter D-1); Perez, the appellant here (D-2), who was the sole defendant ultimately found liable; and Max Berens (D-3), who was deceased at the time of trial.[1]

D-1 testified that he had been stopped behind plaintiffs for about 10 or 15 seconds when he heard a noise behind him, that his car was pushed forward into plaintiffs' vehicle and that both the front and rear of his automobile suffered extensive damage.

D-2, in turn, testified that he was stopped for about 10 seconds behind D-1 when he was struck from behind by D-3 and pushed into D-1, and that there was both front and rear damage to his car. He did not know whether D-1 had previously made contact with plaintiffs' vehicle.

Masha Berens, widow of D-3, testified that she was seated next to her husband, that another couple was seated in the rear and that they were going to a wedding. They were late, but were not proceeding fast bacause of the heavy traffic. She heard a "bang" and *then* (i.e., after that) her husband "like short stopped" and "touched" D-2.

Counsel for D-1 then proceeded to cross-examine Mrs. Berens. He asked her to identify her husband's signature on a document. Upon request of counsel of her late husband (D-3), the jury was excused and there was a colloquy as to the admissibility of the document, a certified copy of D-3's motor vehicle report. D-1's counsel stated that he sought to introduce it as contradictory of Mrs. Berens' testimony that she heard a bang *before* D-3 struck D-2, in that the report made no mention of such noise or of an earlier contact. D-3's counsel objected to its admissiblity, stating that since he conceded that D-3 struck D-2, the report was "not in any way enlightening" as to anything that was relevant, and since D-3 was not testifying, *his* credibility could not be attacked. There was a spirited argument between counsel for D-1 and D-3. Counsel for D-2 (appellant) did not participate; he made no argument either for or against admission and he did not ask that, if admitted, it be for a limited purpose.

---

1. The letters and numbers refer to the respective vehicles or to the operators thereof.

The court ruled the report relevant and stated to counsel for D-3, "You have your exception." Then, on the jury's return, after the document was redacted (presumably as to insurance coverage) it was admitted in evidence, accompanied by the following statement of the court to the jury: "This admission is independent of anything that this witness [Mrs. Berens] testified to. It has nothing to do with what the witness is saying."

The report contained the following: "Car number 3 [D-2 herein] stopped short of my car, therefore hit three was behind him and impossible to stop my car." (Bracketed matter supplied.)

In the course of his summation, counsel for D-2, referring to the motor vehicle report of Mr. Berens (D-3), said: "I want you to look over that and see if he says anyplace on there that an accident happened in front of him, that two other cars were in collision first, and if you can find it anyplace on there it will be a miracle * * * [N]ow, this is his wife's story * * * 'I remember hearing a bang.' Mr. Berens doesn't put anything on it, about a bang in here. Not a word. Nothing about [a] prior accident * * * He doesn't even bother identifying the first two cars. Doesn't even put their names down. And you're asked to make an assumption that these first two cars were in some sort of an accident in front of Mr. Berens. Its illogical, nonsensical?"

Counsel for defendant Smith (D-1) also referred to the report in his summation, in support of his contention that Berens (D-3) was at fault in that he was the initiator of a chain collision.

The court's instructions to the jury, insofar as they related to motor vehicle reports, included the following: "Now, you heard the testimony concerning the two Motor Vehicle Reports. Those Motor Vehicle Reports have been received in evidence and they are part of the proof in the case. The Motor Vehicle Report of Charles Thrower was part of his version of how the accident happened, and the Motor Vehicle Report of Max Berens was for the purpose of showing his explanation of how the accident happened. These Motor Vehicle Reports are part of the testimony of these two particular drivers."

At the close of the charge, the court inquired whether there were any exceptions and counsel for D-2 stated:

"I take an exception to Your Honor's charge with regard to

the weight of evidence to give in the Motor Vehicle Report of Mr. Berens. Your Honor, I believe, charged this jury that that report was entered into evidence for the purpose of showing his explanation of how this accident happened. I feel that that is not proper, that it shouldn't have—that is not the reason that this was offered into evidence whatsoever. Any writings on there, as far as an explanation of this accident, that are on there, has no bearing as against the others—in particular, my defendant, who not only did not offer this document in but was not privy to making it.

"THE COURT: You have your exception."

In its charge the court submitted four written questions to the jury. The first was: "Have the plaintiffs shown that John J. Smith [D-1] was negligent?" The next two were identical except for the substitution of the names of D-2 and D-3. The fourth was: "Has the plaintiff, Charles Thrower, shown that he was free from contributory negligence?"

In the course of their deliberations, the jurors returned and asked for a reading of the cross-examination of D-1 by counsel for D-3, with reference to the damage to D-1's automobile (wherein he had testified that it had suffered extensive damage to the rear, as well as to the front). Thereafter, the jury returned a special verdict stating that as to question number four plaintiff Charles Thrower "has * * * shown that he was free from contributory negligence". As to each of the other questions, i.e., whether plaintiff had "shown" any of the three defendants to have been negligent, the answers were "No".

The court sent the jury back for further deliberations with the following instructions: "I am going to send you back. Now, you have found that Charles Thrower was not negligent, you said he was not guilty of contributory negligence, which would mean to me that his car was stationary at the time he was struck and that he was not responsible for the accident. Now, if that's so, then one or two or all of the other drivers were negligent. Now, I am going to send you back, and, if you have any questions to ask, you may write them out. Now, you return to the jury room and take these questions back."

Counsel for each defendant vigorously objected. The court explained that since this was not an unavoidable accident (and defendants' counsel did not contest this) one, two or all of the operators must be liable.

In the course of their further deliberations, the jurors requested the motor vehicle reports "that were entered as

evidence". Thereupon the reports of Charles Thrower and D-3 were furnished to them. Subsequently they returned with a verdict against D-2 (Perez) alone.

Thereafter, plaintiffs and defendant Perez stipulated, without prejudice to Perez' right to appeal, that plaintiffs' damages were $17,500.

Defendant Perez is the sole appellant. Plaintiffs have not appealed from that portion of the judgment which dismissed their complaint as against defendants Smith (D-1) and Berens (D-3).

THE LAW

1. WAS THE ADMISSION OF THE MOTOR VEHICLE ACCIDENT REPORT OF THE DECEDENT MAX BERENS PRESERVED FOR REVIEW BY APPELLANT PEREZ?

Appellant argues that it was prejudicial error to instruct the jury that the accident report of the decedent Berens "was for the purpose of showing his explanation of how the accident happened."

As aforestated, counsel for appellant maintained a position of silence during the battle between the attorneys for D-1 and D-3 as to the admissibility of the decedent's accident report, probably because it contained elements both beneficial and harmful to him. The *benefit* was the same that counsel for D-1 apparently perceived when he urged its admission; the report weakened the testimony of Mrs. Berens to the effect that there was a loud impact (presumably caused by D-1 or D-2) *before* D-3 "touched" D-2. If Mrs. Berens were to be believed, her husband's contact with D-2 was too slight to have caused a chain reaction which could have ultimately resulted in the impact to plaintiffs' vehicle and in the substantial damage alleged to have been sustained by the vehicles of D-1 and D-2. Thus, any damage to plaintiffs' vehicle would have been caused by D-1 or D-2. The *harm* to D-2's case was the statement in D-3's report that D-2 had stopped short (which was contrary to the latter's testimony). The stopping short conceivably could have been the result of D-2's striking D-1 (although it also could have been because D-2 observed that D-1 had struck the plaintiff's vehicle).

As stated in Richardson, Evidence ([Prince, 10th ed], § 537), "the initiative [as to objections] is ordinarily left to the opponent, and if he fails to make timely objection, he will, as a

general rule, be held to have waived his right to object" (see, also, McCormick, Evidence [2d ed], § 52).

By remaining silent and neutral during the spirited collo- quy of the other counsel as to the admissibility of the motor vehicle report, appellant did not preserve the right to raise the alleged erroneous admission of the document on his appeal. At the battleground of a trial, civilized though it should be, there is no neutrality permitted on the issue of admissibility of evidence.

Appellant did more than remain neutral, however, for in his summation he took the ball and ran with it as far as he could go. It is, therefore, too late for him now to complain that that ball should not have been in play.

Appellant points out that he did except to the portion of the charge that "the Motor Vehicle Report of Max Berens was for the purpose of showing his explanation of how the accident happened." In the course of such exception, he stated: "Any writings * * * that are on there, has [sic] no bearing as against the others—in particular, my defendant, who not only did not offer this document in but was not privy to making it." Thus, again, he relied on the quicksand of his neutrality as to the admission of the document. But beyond that, at *that* juncture, after the document had been admitted without any request that it be received for a limited purpose (either by his counsel or any other counsel), after counsel for both D-1 and D-2 had fully expressed, in their respective summations, how the document disproved Mrs. Berens' testimony of an earlier "bang", any "elucidation" by the court of the limited aspect of its relevance would have mystified and not clarified the situation. At that point the accident report was in the record. Nothing the court could have done would have eliminated that history, "nor lure it back to cancel half a line". Under the circumstances, given this record and upon their perusal of the document itself, it is inconceivable that the jurors could erase from their memory the fact that D-3 stated that D-2 had stopped short, even if the court had formally advised the jurors that the report was received only for a limited purpose. In short, if the court committed error in that regard, it was clearly harmless.[2]

---

2. In view of the record here, I deem it unnecessary to consider whether the charge, as given, was correct. (See *Geminder v Zauderer*, 8 AD2d 703; *Reed v McCord*, 160 NY 330; *Koester v Rochester Candy Works*, 194 NY 92; *Borsella v Wickham Bros.*, 6 AD2d 784; *Morini v Murphy*, 285 App Div 1154; *Welde v Wolfson*, 32 AD2d

## 2. WAS IT ERROR FOR THE COURT TO REJECT THE ORIGINAL VERDICTS SEPARATELY EXONERATING EACH OF THE DEFENDANTS?

Appellant does not contend that the special verdict that plaintiff Charles Thrower was not contributorily negligent is against the weight of the evidence. In fact, a contrary verdict on that issue would had to have been set aside.

Therefore, on the record, there were seven possible verdicts:

1. Against D-1 alone, if the jury believed that the only (or only meaningful) impact to plaintiffs' vehicle resulted when D-1 independently struck it.

2. Against D-2 alone, if the jury believed that the impact to plaintiffs' vehicle occurred only when D-2 struck D-1 and pushed D-1 into plaintiffs' vehicle.

3. Against D-3 alone, if the jury believed that the impact to plaintiffs' vehicle occurred only when D-3 struck D-2 pushing D-2 into D-1 which in turn was pushed into plaintiffs' vehicle.

4. Against D-1 and D-2, if the jury believed that D-1 independently struck plaintiffs' vehicle and then again struck plaintiffs' vehicle as a result of his having been hit by D-2.

5. Against D-2 and D-3, if the jury believed that D-1 had not independently struck plaintiffs' vehicle, but nevertheless had impact with plaintiffs' vehicle twice, first when D-1 was independently struck by D-2 and second as a result of D-3 having hit D-2.

6. Against all defendants, if the jury believed that plaintiffs' vehicle had suffered three impacts resulting from three successive and independent collisions.

7. Against all defendants, if on the record, it was impossible for the jury to determine which defendant(s) had independently collided with the preceding car so that it caused an impact (or impacts) upon plaintiffs' vehicle. (This is discussed below.)

The jury's initial verdict was, in effect, "none of the above". It is apparent that in the context of the charge that plaintiffs must "show" which defendant was negligent, the jurors found it difficult to separate the individual skeins of evidence and concluded that the proper response to the questions "Have the

973.) It is clear that the alleged error was not of such fundamental nature as to require a reversal, in the light of appellant's neutrality as to the admission of the document and his course of conduct thereafter.

plaintiffs shown that [each separately named defendant] was negligent?" was "No."

Since no one contended, and the evidence in no way indicated, that plaintiff Charles Thrower was in any way negligent, or that the collision was the result of an unavoidable accident, the court properly directed the jury to deliberate further and to decide which one or more of the defendants was liable. All that the court was doing was eliminating "none of the above" as one of the possible verdicts, something that the court should have done in its original charge since no one contended that plaintiffs were guilty of contributory negligence.

What the court should have done, as I shall make clear later, was to charge (either originally or after the aborted first verdict) that if, after full deliberation the jurors could not, on the weight of the evidence, exclude any of the defendants from independent responsiblity for a meaningful impact to plaintiffs' vehicle, they could render a verdict against all of the defendants. No such request to charge was made.[3]

3. WHAT IS THE LIABILITY OF SEVERAL PERSONS INVOLVED IN AN ACCIDENT WHERE AT LEAST ONE, AND POSSIBLY ALL, WERE NEGLIGENT, IN THE ABSENCE OF A SHOWING WHICH ONE OR ONES WERE NEGLIGENT?

It is now well-settled law that where several defendants cause injuries to a plaintiff, but it cannot be determined which injuries were caused by the defendants found to be negligent, each of the defendants is liable for all of the injuries (*Hawkes v Goll,* 256 App Div 940, affd 281 NY 808; *Musgrave v Williams,* 239 App Div 802; see 1 PJI, 2:307). Further, it is generally accepted that where several defendants, who are found to be tort-feasors, are guilty of acts, only one of which caused the injury, all are liable absent a showing as to whose act was the cause (*Summers v Tice,* 33 Cal 2d 80; *Hall v E. I. du Pont de Nemours & Co.,* 345 F Supp 353, 378-380; see, also, Ann., 5 ALR2d 98; Restatement, Torts, 2d, § 433 B, subsec [3]).

---

3. The failure to make such a request is quite understandable. Plaintiffs probably did not make the request as to the original charge because the law in this State has not been sufficiently focused on this problem. They did not so request after the initial verdict for the (additional) reason that they were satisfied from the court's charge after the initial verdict, that the recovery against any defendant (now guaranteed) was collectible. Counsel for the various defendants would not so request (had they thought of it) because each, no doubt, hoped that justice would prevail and his client would be exonerated.

The effect, as stated in Harper and James, Law of Torts (vol 1, § 10.1, p 709), "is to require the [tort-feasor] defendants, not the plaintiff as was formerly the case, to show that the other tort-feasors contributed to the harm and in what quantities they so contributed * * * In practical effect the court is holding, at least implicitly, that as far as the plaintiff is concerned the harm is indivisible."

An example of this aspect of the responsibility of multiple tort-feasors is contained in illustration 9 of the official reporter's notes to Restatement, Torts 2d (§ 433 B, p 447 [1965]), which (as stated in the Appendix Volume thereof [1966], p 144) is based on *Summers v Tice (supra):* "A and B, independently hunting quail, both negligently shoot at the same time in the direction of C. C is struck in the fact by a single shot, which could have come from either gun. In C's action against A and B, each of the defendants has the burden of proving that the shot did not come from his gun, and if he does not do so is subject to the liability for the harm to C."

The issue in this case, however, goes beyond that. In the cases cited, each of the defendants was, in fact, a tort-feasor whose act could have led to the injury; the negligent act of each *could* have been the proximate cause of the injury; at best it was mere fortuity that it was not. In such a case, the choice of denying a recovery to an innocent plaintiff (because he cannot disentangle the threads of evidence against each defendant) rather than to require *all* the tort-feasors to be liable (where none can establish that *his* tort did not cause the injury) is manifestly unjust. Each defendant, having committed a tort, is burdened with the responsibility of showing that it was not his wrong that caused the injury.

The question here, and apparently a novel one is this State, is whether a similar burden should be placed on a defendant who has not been shown to be a tort-feasor, where, in fact, *that is the very issue,* and it is quite possible that his only involvement was his presence at the scene so that he *could* have been a tort-feasor. The problem is more difficult than in *Summers v Tice* (33 Cal 2d 80, *supra)* because the defendant may well have done nothing for which an imposition of the burden of disproof would be a proper consequence. Where such disproof is impossible, should he be swept into a tidal wave which engulfs the innocent as well as the guilty? Should guilt by association of space and time be permitted?

In this hard choice of injustices, where we must fill "the

open spaces in the law \* \* \* without traveling beyond the walls of the interstices" (Cardozo, Nature of the Judicial Process [1921], pp 113-114), I believe that the law ought to place the burden upon all the defendants who were involved in the incident or chain of events and require each of them to show that the tort was not his. There should no longer be a presumption of nonliability in this aspect of the civil law, than there is where a plaintiff makes out a case of *res ipsa loquitur*. In fact, the same rationale applies—that each defendant knows more of what he has done than does the plaintiff.

Thus, as far back as 1945, in *Ybarra v Spangard* (25 Cal 2d 486), it was held that a patient against whom a tort had been committed while he was lying unconscious on an operating table could hold liable all of the persons who had any connection with the operation, even though he could not pinpoint the person who had commited the tort.

In *Anderson v Somberg* (67 NJ 291), it appeared that an injury to a hospital patient resulted either from the negligence of the hospital staff or a defect in the surgical instrument (but not both), and it could not be determined which was the cause. The court held that the burden of proof shifted to each defendant to prove nonculpability upon pain of being held liable. Commenting on the `Anderson` holding, Circuit Court Judge ROSENN, in his concurring opinion in *Huddell v Levin* (537 F2d 726, 746), said: "The holding in *Anderson* may be restricted to instances in which the plaintiff suffered injury while an unconscious hospital patient. Nevertheless, it represents a clearly delineated policy choice of the New Jersey Supreme Court to place the penalty for failure to apportion damages on some innocent defendants in order to allow an innocent plaintiff full recovery."

I believe Judge ROSENN's statement represents a natural and just development of the established principles relating to the impossibility of division of damages among tort-feasors and that it is the rule of law which should be applied under the circumstances of this case.

4. WHETHER THE JUDGMENT SHOULD BE REVERSED BY REASON OF THE FAILURE OF THE TRIAL COURT TO CHARGE THAT ALL DEFENDANTS COULD BE HELD LIABLE IF IT CANNOT BE DETERMINED BY THE JURY WHICH ONE OR ONES WAS NEGLIGENT

Appellant did not request a charge along the lines just discussed. It is understandable therefore that he would not raise that point on this appeal. Nevertheless, because what I

am here enunciating seems to be a new principle of law in this State, I deem it appropriate, *sua sponte,* to consider whether the interests of justice require a reversal and a new trial, so that a new jury may know that it is within its province to hold all defendants liable if none of them met his burden of proving nonliability.

It seems obvious that the initial verdict indicated that the jurors, in the context of the court's charge which placed the burden on the plaintiffs to show by a preponderance of the evidence which one of the defendants was the tort-feasor, felt that they could not do so. Having been charged that they must determine whether plaintiffs had "shown" whether each specific defendant was negligent, they (quite logically) stated "No." It is also probable that had the jury been charged that in such case *all* defendants could be held liable, the jury would have so held. As a consequence of this, should there be a new trial? I believe not.

The record shows that this was not a case where the evidence against each defendant was truly incapable of separation into individual acts which would indicate or rule out discernible separate torts by each defendant. There was testimony of the extent of each of the impacts and the nature and extent of the damage to each vehicle. The jury evidently ultimately concluded (from such testimony, from the demeanor of the witnesses and perhaps from the motor vehicle reports admitted into evidence), that D-1 had stopped behind plaintiffs' vehicle without striking it; that D-2, *with great force,* struck D-1, which was then impelled forward, striking plaintiffs' vehicle and that D-3's contact with D-2 was too slight to have caused an ultimate impact upon plaintiffs' vehicle. That conclusion is not against the weight of the evidence. Had such been the initial verdict, clearly it could not have been set aside. The jury, when forced to further analysis, produced a rational verdict. I cannot, upon this record, say that when forced to choose, it chose blindly. The judgment should therefore be affirmed.[4]

---

4. Regardless of our disagreement with respect to the question of whether the court's instructions as to the effect of the motor vehicle report was correct, I am completely perplexed by the conclusion of the majority that there should be a new trial since they say "that * * * the trial court seriously erred in directing the jury to resume deliberations after it refused to accept that body's findings on the issues of negligence and contributory negligence." If the direction to resume deliberations was erroneous, I cannot understand why the majority is not reinstating the verdict in favor of the defendants instead of ordering a new trial.

RABIN and COHALAN, JJ., concur with TITONE, J. P.; SHAPIRO, J., dissents and votes to affirm the judgment, with an opinion.

Judgment of the Supreme Court, Kings County, entered March 18, 1977, reversed, on the law, and new trial granted as to all parties and causes, with costs to abide the event.