Michael FARRINGTON, Petitioner–
Appellant,

v.

Daniel SENKOWSKI, Superintendent,
Clinton Correctional Facility,
Respondent–Appellee.

Docket No. 98–2939

United States Court of Appeals,
Second Circuit.

Submitted: Aug. 26, 1999

Decided: June 5, 2000

238

Domenick J. Porco, Scarsdale, New York, for Petitioner–Appellant.

John J. Sergi, Assistant District Attorney, Westchester County (Jeanine Pirro, District Attorney, and Joseph M. Latino, Assistant District Attorney, of counsel), White Plains, New York, for Respondent–Appellee.

Before: WINTER, Chief Judge, KEARSE, and STRAUB, Circuit Judges.

WINTER, Chief Judge:

Michael Farrington appeals from Judge Parker's dismissal of his habeas petition brought pursuant to 28 U.S.C. § 2254. Appellant argues that: (i) the evidence at trial was insufficient as a matter of law to support his felony murder and attempted robbery convictions; (ii) he was deprived of effective assistance of counsel when his attorney failed to cross-examine a witness based on a videotaped statement and to object to certain jury instructions; and (iii) the prosecutor's statements to the jury deprived him of a fair trial. We affirm.

## BACKGROUND

In the early morning hours of July 16, 1991, in Mount Vernon, New York, appellant met four of his friends, Victor Byrd, Anthony Burts, Kenya Forrester, and Lamont Gainey. The five teenagers went to a public park where they drank beer and smoked marijuana. Burts had a loaded pistol, which he passed around. Gainey took the bullets out of the gun, slit the tops off, and put them back in the gun, purportedly to make them more likely to open upon impact. The group briefly discussed robbing a restaurant but rejected the idea because they were likely to be recognized by workers or patrons.

The group then left the park and decided to steal a car. While going to Forrester's house to get a screwdriver to be used in the theft, they came upon Joseph Hanna, who was delivering newspapers and had left his car idling. They asked him for a newspaper, and he threw them one. They then decided to steal Hanna's car.

After appellant got into the car, Hanna ran over to the vehicle and began to struggle with appellant. At some point, the car crashed into a parked vehicle. After some time, Burts fired a shot in the air. Appellant and Hanna continued to struggle. Gainey took the gun from Burts, ran over to the car, and shot Hanna, killing him. The teenagers fled on foot.

When apprehended, each of the teenagers gave videotaped testimony to the police. In appellant's videotaped statement, he stated that he did not know or expect that his friends would intervene but admitted that he attempted to move the car forward when Hanna reached into the car and attempted to move the gearshift into park. He stated that he struggled with Hanna over the gearshift and the keys.

Forrester was the state's primary witness at appellant's trial. In the videotaped statement made after his arrest, Forrester related the following:

> Then, the man came over to the window, and was grabbin' him and then, [he] kept on putting the car in drive and then the man threw it in park and he's tryin' to put it back in drive. Then the man grabbed his hands and was goin' to pull him out the window, couldn't get him out the window.

Later on the tape, Forrester was asked whether Hanna said anything during the struggle, to which he replied:

> He didn't say nothing. [Appellant] had said that he was talking to the man while the man was grabbing his hand. That he was talking to the man.
>
> Q: Do you know what was said?
>
> A: Yes. It was like, when the man came over there and grabbed him, he yell like "You better let me get out the car and let me leave." Then, then, the man is still grabbing him. And then, he is like, "If you don't let me go my boys will come over and kill you."

Prior to the trial, appellant's trial counsel reviewed Forrester's videotaped interview. At that time, he did not believe

Forrester's statements on the tape to "undermine[ ] the legal theory of the prosecution's case against [appellant]," as he understood it. He viewed Forrester's quoting of appellant as saying, "You better let me leave this car or my friends will come over and kill you," as strengthening the prosecution's case. Later, in a pretrial interview with counsel, Forrester denied that appellant had made a statement about his friends killing Hanna.

Appellant was tried in the County Court, Westchester County. Forrester testified that at the time of the struggle he had heard appellant exclaim only, "Get away from the car." Forrester also testified that appellant later admitted to him that "[H]e like told the man to get away from the car before his boys come over here and kill him." Appellant's trial counsel did not attempt to impeach Forrester or to refresh his recollection with the videotaped statement that attributed the "let me get out ... let me leave" exclamation to appellant. Rather, he sought to impeach Forrester with his denial in the pretrial interview that appellant had ever warned Hanna about the "boys" coming over and killing him. Forrester answered with the explanation that he had reviewed his videotaped statement and that it had refreshed his recollection. In a post-trial affidavit, appellant's trial counsel stated that he "did not confront [Forrester] with the videotape because [he] perceived no distinction between the two versions" of the story.

Appellant was convicted of one count of felony murder in the second degree, two counts of attempted robbery in the first degree, one count of attempted robbery in the second degree, one count of attempted grand larceny in the fourth degree, and one count of criminal possession of a weapon in the second degree. Appellant moved to vacate the judgment pursuant to N.Y.Crim. Proc. Law § 440.10(h), contending that he had been denied his Sixth Amendment right to the effective assistance of counsel because of his attorney's failure to confront Forrester with the videotaped statement. Noting that appellant's "counsel at trial conducted a thorough and extensive cross examination" of Forrester and that "the videotape [was not] as compelling or damaging to the prosecution's case as [appellant] now urges," the Westchester County Court denied the motion. On a consolidated appeal from the judgment and the denial of the Section 440.10 motion, the Appellate Division affirmed. *See People v. Farrington,* 225 A.D.2d 633, 639 N.Y.S.2d 436, 436 (App.Div.1996). The New York Court of Appeals denied leave to appeal. *See People v. Farrington,* 88 N.Y.2d 935, 647 N.Y.S.2d 169, 670 N.E.2d 453, 453 (N.Y. 1996).

Appellant then filed the instant habeas petition pursuant to 28 U.S.C. § 2254. The district court denied the petition, *see Farrington v. Senkowski,* 19 F.Supp.2d 176, 181 (S.D.N.Y.1998), but granted a certificate of appealability.

## DISCUSSION

■ We review a district court's denial of a petition for a writ of habeas corpus *de novo. See Einaugler v. Supreme Court of State of New York,* 109 F.3d 836, 839 (2d Cir.1997); *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996).

### a) *Sufficiency of the Evidence*

■ Appellant first argues that his convictions for attempted robbery and felony murder violate due process because the evidence was insufficient as a matter of law to support his attempted robbery convictions. Appellant contends that the government failed as a matter of law to meet its burden to show that he used physical force to retain the property he was attempting to steal.

■ "[A] state prisoner 'is entitled to habeas corpus relief [only] if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Einaugler,* 109 F.3d at 839

(quoting *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Appellant bears the burden of rebutting the presumption that all factual determinations made by the state court were correct. *See* 28 U.S.C. § 2254(e).

New York defines robbery as "forcible stealing. A person ... commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of ... [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking...." N.Y. Penal Law § 160.00(1). In appellant's own videotaped pretrial statement, which was shown to the jury, he admitted that he struggled with Hanna over the keys and gearshift and tried to drive the car away with Hanna hanging on. *See Farrington*, 19 F.Supp.2d at 181. This level of actual physical force was easily sufficient under New York law to elevate attempted larceny to attempted robbery. *See People v. Santiago*, 48 N.Y.2d 1023, 425 N.Y.S.2d 782, 402 N.E.2d 121, 121 (N.Y.1980) (finding level of physical force sufficient to sustain attempted robbery and felony murder convictions when defendant reached out window from moving train and attempted to snatch purse of woman standing on platform); *see also* N.Y. Penal Law § 160.10(3) (construing any forcible stealing of a motor vehicle as second degree robbery); *id.* § 160.15(3) (defining first de-

gree robbery as forcible stealing in which one of crime's participants "in the course of the commission of the crime or of immediate flight therefrom ... [u]ses or threatens the immediate use of a dangerous instrument").

### b) *Ineffective Assistance of Counsel*

■ Appellant next claims that he was denied effective assistance of counsel because his trial attorney failed to use Forrester's prior videotaped statement and to object to allegedly erroneous jury instructions.

■ In assessing appellant's claim that his trial counsel's assistance was "so defective as to require reversal of a conviction," we follow the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant bears the burden of showing both that counsel's representation was so objectively deficient "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and "that the deficient performance prejudiced the defense." *Id.* According to appellant, Forrester's videotaped statement supports the view that he was trying to leave the car once Hanna confronted him, rather than applying force to steal it. Appellant argues that it is reasonably likely that the jury would not have convicted him on the attempted robbery counts had the trial counsel presented this taped testimony to the jury.[1] Thus, appellant con-

---

1. The briefing of the parties appears to assume that, if appellants' counsel had confronted Forrester with the videotape, the "let me get out ... let me leave" statement would have come in for the truth of the matter stated. The issue is not that simple, however.

Confronted with the videotape, Forrester might have denied that appellant ever said those words and have stated that his earlier statement to the contrary was incorrect. In those circumstances, the videotape would be admissible only to impeach Forrester, and not for the truth of the matter stated. *See People v. Duncan*, 46 N.Y.2d 74, 412 N.Y.S.2d 833, 385 N.E.2d 572, 576 (N.Y.1978) (stating that prior inconsistent statement "bears only upon the credibility of the witness"); Richard T.

Farrell, *Richardson on Evidence* § 6–411, at 405 (11th ed. 1995) (New York evidence treatise).

Or, Forrester might have confirmed that he heard appellant say "let me get out ... let me leave" as Hanna attempted to pull him through the window. Appellant's exclamation in those circumstances would be hearsay but almost surely admissible for the truth of the matter stated as a spontaneous declaration or excited utterance. *See People v. Edwards*, 47 N.Y.2d 493, 419 N.Y.S.2d 45, 392 N.E.2d 1229, 1231 (N.Y.1979) (explaining that "[o]ne of the better-known exceptions to the injunction against the reception of hearsay testimony permits the introduction of a spontaneous declaration or excited utter-

tends, the convictions under each attempted robbery count and under the felony murder count must be overturned.

We do not decide whether counsel's performance was so "outside the wide range of professionally competent assistance" as to constitute ineffective assistance under the Sixth Amendment. *Id.* at 690, 104 S.Ct. 2052. Appellant's trial counsel extensively cross-examined Forrester. He specifically impeached Forrester's testimony about appellant's exclamation that "my boys will come over and kill you" by referring to Forrester's denial in a pretrial interview that such a statement was made. Use of the videotape would of course have established Forrester's earlier confirmation of such a statement. There was reason, therefore, to fear use of the videotape. Nevertheless, counsel's affidavit states that he had either forgotten, or did not appreciate, the "critical difference" between Forrester's videotaped statement and his testimony. Moreover, the jury learned from Forrester that there was a videotape of Forrester confirming the "my boys ... will kill you" statement, and much of the feared negative impact of the videotape occurred anyway. It is thus not clear that, "under the totality of the circumstances, [counsel] failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances." *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir.1996).

We need not resolve this issue, however. *See Strickland*, 466 U.S. at 693, 697, 104 S.Ct. 2052 ("Even if a defendant shows that particular errors of counsel were unreasonable, ... the defendant must show that they actually had an adverse effect on the defense[,] .... [and] there is no reason ... to address both components of the inquiry if the defendant makes an insufficient showing on one."). Assuming *arguendo* that trial counsel's conduct fell short of the constitutionally required assistance, we conclude that appellant was not prejudiced by his attorney's failure to confront Forrester with the videotaped statement.

■■■ To establish prejudice, appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. To determine whether appellant has met his burden, we must presume that the jury would correctly apply the governing legal standards in light of the totality of the evidence before it. *See id.* at 694–96, 104 S.Ct. 2052.

In our view, use of the videotape would not have altered the outcome. Both Forrester's testimony and appellant's own videotaped admission established for the

ance"); *People v. Caviness*, 38 N.Y.2d 227, 379 N.Y.S.2d 695, 342 N.E.2d 496, 499 (N.Y. 1975) (same); *Richardson on Evidence* § 8–605, at 639 (foundation for excited utterance is that "the declarant was under the stress of excitement caused by an external event sufficient to still his reflective faculties").

Or, and perhaps most likely, Forrester might have confirmed that, in a conversation that took place at appellant's home after the killing, appellant told him that appellant had told Hanna to "let me get out." At trial, Forrester testified that the only thing he heard appellant say to Hanna at the time of the crime was, "Get away from the car." Forrester's testimony about appellant warning Hanna that his "boys" would come over and kill him was that appellant told Forrester of the statement in a subsequent conversation at ap-

pellant's house. The videotape is not inconsistent with this version. On the pertinent portion of the tape, Forrester is not asked, "Did you hear what Farrington said to Hanna?" Rather, he was asked, "Do you know what was said?", to which he answered with a description of the "let me get out" and "my boys ... will kill you" statements. While the latter was admissible as an admission, the former would be admissible only to complete the context in which the admission was made, *see Thrower v. Smith*, 62 A.D.2d 907, 406 N.Y.S.2d 513, 516 (App.Div.1978), a discretionary trial court decision.

Given our view that admission of the "let me get out.. let me leave" statement for the truth stated would not have altered the outcome of the trial, we will not dwell on these niceties further.

jury that appellant drove forward as he struggled with Hanna over control of the gearshift and keys. At this point, if appellant wanted to "leave," it was with the car. Only after the crash and the attempts to take the car failed could appellant have told Hanna to "let me get out" or "let me leave," and then as Hanna grabbed appellant and tried to pull him through the window. Appellant's struggle over the gearshift and keys and attempt to drive forward easily met the level of force sufficient under New York law to constitute robbery—the "use of physical force upon another person for the purpose of ... overcoming resistance to the taking of the property or to the retention thereof immediately after the taking." N.Y. Penal Law § 160.00; *see also Santiago*, 425 N.Y.S.2d 782, 402 N.E.2d at 121 (upholding attempted robbery and felony murder convictions when defendant reached out window from moving train and attempted to snatch purse of woman standing on platform).

Indeed, in summation, the prosecutor relied precisely on this application of force to establish robbery by arguing:

Robbery ... is forcible stealing.

. . . . .

Now, force in a robbery ... is not limited to the use of a gun or the use of a knife.... This can be any kind of physical force which is used to overcome the resistance to the taking or to retaining the property immediately after the taking.

. . . . .

[W]hen the chain of events first began with Michael Farrington running over to this car and getting inside ... the People do not disagree with defense in this case that this started out as a plan to commit larceny.

. . . . .

Michael Farrington's conscious decision when Joseph Hanna arrives back at the car and reaches inside to stop Mr. Farrington from taking his car, his conscious decision while that car is backing up and then crashing[,] ... his conscious decision to take that car out of reverse, to put it into drive and to drive that car forward with Mr. Hanna reaching into that car was the first use of force in this attempted robbery.

This conscious decision to shift gears after Mr. Hanna returned to his car and to move it forward in an effort to continue this attempt to steal his property while Mr. Hanna struggled to get it back is physical force used in furtherance of this attempt to steal property.

The prosecution thus relied upon appellant's use of force against Hanna in fighting for control of the gearshift and keys and in attempting to drive away to elevate the attempted larceny to attempted robbery. It would hardly have been a persuasive answer to show that appellant may have expressed a desire to escape as Hanna tried to pull him through the window after the attempt at robbery had failed. A jury applying the correct legal standard would not, therefore, have changed its verdict had Forrester's videotaped statement been introduced.

Moreover, even if the jury were to credit the "let me get out ... let me leave" statement, it would not absolve appellant of either first degree attempted robbery or felony murder under New York law. In New York, "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of commission of the crime *or of immediate flight therefrom,* he or another participant in the crime ... [c]auses serious physical injury to any person who is not a participant in the crime." N.Y. Penal Law § 160.15(1) (emphasis added). Similarly, the New York felony murder statute reads: "A person is guilty of murder in the second degree when ... [a]cting either alone or with one or more other persons, he commits or attempts to commit robbery ... and, in the course of and in furtherance of such crime *or of immediate flight therefrom,* he, or another participant ... causes the

death of a person other than one of the participants...." N.Y. Penal Law § 125.25(3) (emphasis added).

Thus, even if appellant were deemed to be trying to escape from the car after he initially used force to steal it, he would be in "immediate flight" from the crime and therefore guilty of first degree attempted robbery and felony murder under New York law. *See, e.g., People v. Slaughter,* 78 N.Y.2d 485, 577 N.Y.S.2d 206, 583 N.E.2d 919, 922–23 (N.Y.1991) (applying felony murder "immediate flight" provision to high-speed chase ensuing over 15 minutes after crime at location over one and one-half miles from scene of crime); *People v. Falu,* 138 A.D.2d 510, 525 N.Y.S.2d 902, 904 (App.Div.1988) (holding evidence "both legally and factually sufficient" to support judge's finding that defendant who was car passenger in high speed chase was in "immediate flight").

■ Appellant also contends that he was denied effective assistance because his trial counsel failed to object to portions of the jury instructions. The trial court charged the jury: "According to the law, a person steals property when, with intent to deprive another of property or to appropriate the property to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof." These instructions on larceny mirror the statutory language, *see* N.Y. Penal Law § 155.05, and were therefore not "clearly constitutionally deficient," *Bloomer v. United States,* 162 F.3d 187, 194 (2d Cir.1998).

Nevertheless, appellant correctly notes that for there to be a "deprivation" of property so as to constitute larceny under New York law, the property must "be withheld ... permanently or for so extended a period ... that the major portion of its economic value or benefit is lost...." N.Y. Penal Law § 155.00(3). Because specific instructions to the jury with "permanently" in the statutory definition of larceny might have helped appellant on the theory that he and his friends intended not

to steal the car permanently but only to go on a "joy ride," appellant argues that he was not accorded the effective assistance of counsel.

However, the failure to object to the challenged language was part of appellant's trial counsel's strategy to concede guilt of attempted larceny. Indeed, appellant's attorney specifically stated in summation: "I ask you to find Michael Farrington guilty of attempted grand larceny." This concession was made to persuade the jury to acquit on the more serious charges of attempted robbery and felony murder by arguing that a non-forcible theft occurred. This course was a plausible strategic option in a case where the evidence and predatory nature of the crime offered little hope of an acquittal on all counts. It was, therefore, "virtually unchallengeable," *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052, and we will not overturn the jury's verdict for counsel's failure to object to the judge's instructions.

■ We also find no merit in appellant's argument that he was denied effective assistance because his trial counsel did not attempt to persuade the judge to tailor the instructions specifically to his defense to the robbery charge. The defense's theory of the case was clearly presented in summation, and any possible confusion arising from the charge's characterization of the defense's position was therefore harmless.

*c) Deprivation of a Fair Trial*

■ Finally, appellant claims that the prosecutor's summation to the jury deprived him of a fair trial. We agree with the district court that federal habeas review of these claims is barred because appellant "defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Before the district court, appellant argued

only that the procedural default doctrine did not apply because he was "actually innocent" of the crimes at issue. *See generally Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Because Farrington has made no showing of actual innocence, we apply the procedural default rule and reject this argument.[2]

Finding no error of constitutional magnitude, we affirm.

---

2. Even were we to consider appellant's claim on the merits, we do not deem his counsel's failure to object to these charges to be constitutionally ineffective. The prosecutor's allegedly inflammatory comments—asking the jury not to "compromis[e][its] integrity" and not to be talked "into becoming a party to a misdemeanor plea bargain"—were made in response to the defense strategy to concede liability for larceny in the hope of escaping liability for the felony offenses. The summation was not in any respect so inflammatory as to cause us to question the verdict on federal collateral review.