OLGA WISEMAN, as Administratrix of the Estate of MEYER WISEMAN, Deceased, Plaintiff, v 374 REALTY CORP., Respondent, and PRESBYTERIAN HOSPITAL et al., Appellants.

First Department, October 28, 1976

*Brian P. Mullen* of counsel *(Berel, Navarro & Mullen, P.C.,* attorneys), for H. Houston Merritt, appellant.

*Alexander M. Selkirk, Jr.,* of counsel *(Furey & Mooney,* attorneys), for Presbyterian Hospital, appellant.

*James B. Reich* of counsel *(Julius Gantman,* attorney), for respondent.

MURPHY, J.P. The question presented on this appeal is whether Special Term prematurely dismissed appellants' cross claims for apportionment under the doctrine of *Dole v Dow Chem.* (30 NY2d 143). The court initially denied such relief, but reversed itself on reargument. For the reasons hereinbelow stated, we believe Special Term should have adhered to its original determination.

The amended complaint, in substance, alleges that plaintiff's decedent sustained severe injuries on May 25, 1973 as a result of a fall caused by the defective stairway and handrail in a building owned by defendant-respondent, 374 Realty Corp. He was thereupon taken to appellant Presbyterian Hospital where he was treated by appellants Merritt and Tardo, both of whom are physicians. During the course of decedent's confinement at said hospital, which lasted until his death on June 21, 1973, he was treated with a drug known as "Decadron", which is manufactured by appellant Merck, Sharp & Dohme. Decadron, says plaintiff, is known to cause bleeding of the stomach as a side effect and requires adequate and daily amounts of antacid therapy to prevent and protect against such occurrence. The complaint states causes of action for negligence and wrongful death against all of the above-named defendants because of their respective improper conduct, with additional causes for breach of warranty and strict liability alleged against defendant manufacturer. Each of the appellants (the hospital, the two physicians and the drug manufacturer) cross-claimed against the building owner for an apportionment of

responsibility in the event of recovery by the plaintiff. Said owner then successfully moved to dismiss the cross claims under the authority of *Zillman v Meadowbrook Hosp. Co.* (45 AD2d 267) and *Engram v Kingston Hosp.* (82 Misc 2d 540).

The right of apportionment of liability in New York was formulated in the landmark *Dole* case wherein the Court of Appeals stated (pp 148-149): "The conclusion reached is that where a third party is found to have been responsible for a part, but not all, of the negligence for which a defendant is cast in damages, the responsibility for that part is recoverable by the prime defendant against the third party. To reach that end there must necessarily be an apportionment of responsibility in negligence between those parties."

The *Dole* rule was later declared to be applicable "among joint or concurrent tort-feasors regardless of the degree or nature of the concurring fault." *(Kelly v Long Is. Light. Co.,* 31 NY2d 25, 29.)

Thereafter, CPLR 1401 was redrafted to provide (except in a situation not presently applicable) that "two or more persons who are subject to liability for damages for the same personal injury * * * or wrongful death, may claim contribution among them". Dean McLaughlin's Practice Commentary calls attention to the fact that the drafter's "intent was to expand the right of contribution to include not only joint tortfeasors, but also concurrent tortfeasors, successive and independent tort-feasors, and alternative tortfeasors. * * * All that is required for contribution is that two people be held liable for the same personal injury, property damage, or wrongful death." (See McLaughlin's Supplementary Practice Commentary to CPLR 1401, McKinney's Cons Laws of NY, Book 7B, 1975-76 Cum Ann Pocket Part, p 203.)

In *Zillman (supra)* and *Engram (supra)* the indemnity claims were dismissed because each claimant was found to be an independent and successive tort-feasor.

Although *Zillman* (which was decided before the effective date of the present CPLR 1401) recognized that apportionment between or among independent and successive tort-feasors might be permissible (when, for example, the negligence of one tort-feasor is a direct proximate cause of the injuries sustained by reason of the misconduct of another), it dismissed the third-party claim therein asserted by the second of two hospitals charged with malpractice against the first because: the first hospital's alleged negligence was completed at the

time plaintiff sought additional assistance; the claimant "would be liable * * * only for the aggravation caused by its own conduct"; and the original treating institution's negligence "was not such as to render it likely that [plaintiff] would sustain further injury by reason of subsequent malpractice by another hospital." (45 AD2d, at p 270.) The same explanation was adopted in *Engram,* when the court concluded "that plaintiff is not seeking to recover for the same personal injury [against the several defendants named in two separate actions joined for trial]." (82 Misc. 2d, at p 541.)

In order, then, for respondent building owner to invoke the rationale of *Zillman,* there must be (a) two separate injuries with the second not necessarily resulting from the first, and (b) an ability to delimit the injuries caused by the subsequent tort-feasor. The first tort-feasor's liability (in this case, 374 Realty Corp.) is, of course, extended to cover all damages arising from the ultimate injury. *(Melodee Lane Lingerie Co. v American Dist. Tel. Co.,* 18 NY2d 57.)

Unlike *Zillman* and *Engram,* in the case at bar the injuries sustained by the decedent (as claimed in the amended complaint) resulted in his death. No distinction is made between the injuries allegedly sustained through the purported negligence of the building owner and the injuries resulting from the alleged improper conduct of the appellants. Plaintiff's amended complaint alleges causes of action against all of the named defendants for the same wrongful death; an obviously single indivisible injury. (Cf. *Derby v Prewitt,* 12 NY2d 100.)

Nor, on the instant record and in the present posture of the case, can it be said that the negligence of the building owner was not such as to render it likely that decedent would sustain further injury by reason of subsequent malpractice. If, as plaintiff contends, the decedent suffered a fractured skull as a result of his fall on the premises of the respondent, it may be proven at the trial that this serious injury was a proximate cause of his death, irrespective of any subsequent acts of negligence or malpractice by the appellants. And since each codefendant may be subject to full liability for damages for the same wrongful death, an apportionment would be permissible.

In light of the foregoing, the order of Supreme Court, New York County (SPIEGEL, J.), entered on March 31, 1976, insofar as it dismissed the cross complaints against defendant 374

Realty Corp., should be reversed, on the law, and said cross complaints reinstated, without costs.

LUPIANO, BIRNS, SILVERMAN and NUNEZ, JJ., concur.

Order, Supreme Court, New York County, entered on March 31, 1976, insofar as it dismissed the cross complaints against defendant 374 Realty Corp., unanimously reversed, on the law, without costs and without disbursements, and said cross complaints reinstated.