**Turi CAIAZZO and Frank Caiazzo, Plaintiffs,**

·v.

**VOLKSWAGENWERK, A. G., and James Valentine, Defendants.**

**No. 73 C 1277.**

United States District Court, E. D. New York.

March 19, 1979.

**42.** *Prate v. Freedman,* 583 F.2d 42, 46 (2d Cir. 1978). **43.** *Id.*

Jay W. Dankner, New York City (Lipsig, Sullivan, Mollen & Liapakis, P.C., New York City, of counsel), for plaintiffs.

Edward L. Birnbaum, New York City (Herzfeld & Rubin, P.C., Michael Hoenig and Jeffrey L. Chase, New York City, of counsel), for defendant Volkswagenwerk A. G.

John V. Griffin, Jr., Merrick (Curtis, Hart & Zaklukiewicz, Merrick, of counsel), for defendant Valentine.

## MEMORANDUM and ORDER

DOOLING, District Judge.

On January 17, 1972, plaintiffs husband and wife were driving westbound on the Long Island Expressway enroute from East Quogue to Pelham in their 1965 Volkswagen Minibus, and defendant Valentine, overtaking them in his 1963 Oldsmobile, struck the Volkswagen Minibus in the rear; the minibus swerved to the right, rolled over and finally came to rest facing east just off the right side of the expressway. Plaintiffs, in one action, sued Valentine, alleging his negligent operation of his vehicle, and also Volkswagenwerk, A. G. (hereafter VWAG), claiming, *inter alia,* that the inner door latch handle and the outside handle of the Volkswagen were defective in design so that in the course of the accident the doors were opened resulting in enhanced injury to plaintiffs over and above the injuries they would have sustained but for the allegedly defective door latch mechanisms. After a jury trial the case was submitted to the jury on twenty-five interrogatories and the jury found that the defendant Valentine was driving negligently, that his negligence caused the accident, that the plaintiffs were not driving negligently at any time, that the design and positioning of the outside and inside door handles were defective, that both plaintiffs had been ejected from the Volkswagen in the course of the accident by reason of the defective design of the inside and outside door handles, that the injuries of both plaintiffs in the accident were definitely aggravated beyond the injuries they would have sustained if there had been no design defect, that (disregarding the seat belt matter) neither plaintiff could by the exercise of reasonable care have averted the aggravation of injury caused by the design defect, that VWAG was negligent in the design of the door handles and their positioning and such negligence resulted in the design defect, that the whole amount of the plaintiff Turi Caiazzo's damages was $750,000, the whole amount of Frank Caiazzo's damages was $200,000, that reasonably prudent persons in plaintiffs' circumstances would have been using the seat belts at the time of the accident and that if plaintiff Turi Caiazzo had been using her seat belt her damages would have been prevented to the extent of $187,500 and that had plaintiff Frank Caiazzo been using his seat belt his damages would have been prevented to the extent of $50,000. The jury found that Turi Caiazzo's injuries were aggravated by reason of the design defect in the bus beyond the injuries she would have sustained if there had been no defect to the extent of

$500,000 and that her husband's injuries were so aggravated by reason of the design defect to the extent of $150,000. The jury concluded that plaintiff Turi Caiazzo's injuries due to the design defect would have been prevented by the use of her seat belt to the extent of $125,000, and Frank Caiazzo's damages due to the defect would have been prevented by the use of his seat belt to the extent of $37,500. The jury concluded finally that use of the seat belt would not in the case of either plaintiff have prevented that plaintiff from sustaining all of the aggravation of injuries sustained by reason of the defect in door design. In sum, the jury concluded that Turi Caiazzo was entitled to recover $562,500 against defendant Valentine and $375,000 against defendant VWAG (plaintiff being entitled of course only to satisfactions aggregating $562,500), and the jury awarded plaintiff Frank Caiazzo $150,000 against defendant Valentine and $112,500 against defendant VWAG (plaintiff being entitled only to satisfactions aggregating $150,000).

Defendant VWAG has moved, or renewed motions appropriately made and reserved during and at the close of the trial, for a directed verdict in its favor, or, alternatively for a new trial on the ground that the verdicts are contrary to and against the weight of the evidence, and, finally, setting the verdicts aside on the ground that they are excessive in amount and were rendered under the influence of passion and prejudice. Defendant Valentine has moved for a directed verdict on the ground that negligence on his part and freedom from contributory negligence on plaintiffs' part was not shown, and, in the alternative, for a finding that defendant Valentine should recover over against VWAG for so much of the verdict against Valentine as equals the amount found against VWAG as aggravation of the injuries beyond those which would have been sustained had the VW not been found defective. Defendant Valentine has moved further for a new trial on the ground that the verdict is contrary to law, contrary to the weight of the evidence, and grossly excessive and unreasonable in amount, and on the further ground that the

reduction in the aggregate verdict based on the failure of the plaintiffs to wear seat belts was grossly inadequate and was contrary to the Court's instructions. Defendant Valentine moves also on the ground that plaintiff's counsel misstated the nature of the plea of guilty that the defendant Valentine entered to the traffic charge made against him in consequence of the accident.

The argument on the motions has ranged over a very wide field and, in line with the objections and arguments made during the trial, brings up the practical applications of many points often discussed in the lore of strict liability and of the "second collision." To deal adequately with the points made by the motions it is necessary to state in some detail that evidence which the jury might have drawn upon in arriving at its verdict, that is, to state the evidence that tends to the support of the verdict.

[Detailed discussion of evidence omitted.]

■ *Proximate cause.*—That all the damage the plaintiffs sustained (other than the damage that could have been averted by wearing seat belts) was a proximate consequence of Valentine's negligent driving is self-evident. The substantial questions relate to determining whether the evidence supports the jury's conclusion that two thirds of Turi Caiazzo's injury and damage and three quarters of Frank Caiazzo's injury and damage were proximate consequences of the defect in door handle design and positioning—except to the extent that they could have been averted by wearing seat belts.

■ Some injury to each plaintiff was implicit in their both being thrown from the van; that immediate inference the jury could not avoid. Plaintiffs' medical witness made no attempt to say how much of each plaintiff's physical injury was due to being thrown from the van as distinguished from being injured inside the van, but he did express the opinion that a substantial rear end impact on the van could result in injuries to plaintiff Turi Caiazzo's feet from entanglement in the floor pedals. Defend-

ant's expert testified in substance that even belted riders in a van could sustain crushed skulls in rollover collision; neither he nor any other witness distinctly testified that such belting either would or would not have prevented distinctly identifiable injuries due to the opening of the doors. No expert testimony sought to quantify by fractions or percentages the distribution of injury and damage over possible causes and possible preventives.

An allocation of the kind which the jury made in the present case does not reveal its logic, and cannot be pinned to specific items of evidence. It is in the nature of the jury as an institution that its verdicts must remain inscrutable in cases of the present sort.

■ Taking first the seat belt factor as it affected the defendant Valentine: the finding that use of the seat belts would have averted one-quarter of the injury and damage to each plaintiff was appropriate. The jury had to determine the issue, on which Valentine had the burden of proof, as well as it could from the evidence. It had to decide whether the injuries of the plaintiffs would have been the same or more or less if they had worn their seat belts, and then the jury had to quantify it. It is not possible to say that no view of the evidence which the jury could reasonably take would support its conclusion that use of the seat belts would have prevented a quarter of the damage sustained by each plaintiff. Where the evidence could not be specific and was not, the jury used a reasonable estimate.

■ The necessary terms of VWAG's contentions do not separate the matter of the damages due to the door latch defect from the effect of the failure to wear seat belts. Indeed, the argument against the jury's allocation of the greater part of the total damage to plaintiffs' being thrown from the van extends to criticism of the jury's refusal to treat the seat belt availability as neutralizing the door defect. The jury reasonably found that the greater part of plaintiffs' injuries were sustained because they were thrown from the van, and that using the seat belts would have pre-

vented each plaintiff from sustaining one-quarter of the injuries sustained by reason of the design defect in the doors. The jury could infer from the evidence that in a rollover in which the doors opened the plaintiffs' heads could have been dashed against the ground in the course of the rollover, or that other injuries could have been sustained through the wrenching and twisting of their upper bodies in the course of the rollover under the constraint of the seat belts but without the protection of the closed doors to limit the motion of and the injury to their upper bodies. Quantifying the reduction in injury and damages that might have been effected by wearing seat belts presented the jury a problem without any assured or definite solution, and VWAG, on whom (it is concluded) rested the burden of proof, could not produce physical evidence that could determine the issue. What might have happened is rarely susceptible of proof, and since the jury could find that the belts would not have averted all injury, the jury's duty and problem was to arrive at a reasonable estimate.

■ The expert testimony, which did a good deal—and could easily have done a great deal more—to elucidate the mechanics of the accident, to indicate the different reconstructions of the sequence that might be inferred, and to describe the physical injuries sustained by each plaintiff and the damaging forces that could be inferred from those injuries, could add nothing decisive. The experts' opinions on causation offered argument from fact, not specialized expertness, to answer the final questions about connecting the accident events and physical objects to specific injuries to the persons of the two plaintiffs. Mainly, the expert testimony was descriptive; it opened the way for the jury to draw direct logical inferences from the evidence of the facts. The ultimate answers to the decisive questions were as accessible to the disinterested corporate judgment of the jurors, given the experts' descriptions of the factors in the total equation, as they were to the interested opinions of the experts. In any case it was the burden of VWAG and Valentine to

prove to the jury the extent of the damage that might have been averted by wearing the seat belts, and to establish what portion of the injury and damage was due to the door defects. Some damage from being thrown from the van was incontestable, and the expert testimony did no more than point to alternative paths of causation that evinced no special ranking of probabilities and presented no standard of quantification. The jury had the duty and power to deal directly with the evidence, illuminated by the experts' explanations, and their estimate represents an allocation that the evidence supports.

*Defendants' contentions.*—Defendant Valentine does not advance any particular arguments, except to argue that the jury did not allow enough abatement because of the failure to wear seat belts, and an argument that plaintiffs' summation mis-stated the nature of Valentine's plea to a traffic offense. The first argument is sufficiently answered by what has already been said. The second argument touches on a matter that was not of any real moment and which was sufficiently dealt with when it occurred.

 Defendant Valentine owed both plaintiffs the duty to drive carefully as he overtook them, and his breach of that duty made him answerable to them for the damages "proximately" caused to plaintiffs, or, in the language of § 430 of the Restatement (Second) of Torts, for the harm to them of which his negligence was a "legal" cause. Defendant Valentine's liability would extend to injuries sustained through the cooperating negligent design of the doors on the Volkswagen van and would include the injury that flowed from the failure to wear seat belts unless defendant Valentine proved the extent of the damage that could have been prevented by using the seat belts. See Restatement (Second) of Torts, §§ 435, 442B; Section 433A, comment c; *Spier v. Barker,* 1974, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164.

Defendant VWAG owed a different duty to plaintiffs, but a duty addressed to the same interest of the plaintiffs, that is, their interest in freedom from physical injury.

VWAG contends that there was no evidence warranting the submission of the case to the jury as against it because plaintiffs' evidence furnished the jury with no basis for finding that any identifiable aggravation of injury was due to the opening of the doors in the course of the collision. In addition VWAG contends that under the evidence the jury had to find that the plaintiffs would not have been thrown out of the van if they had been wearing their seat belts, and contends that there is no basis in the evidence for a finding that, had they been wearing their seat belts, they would have sustained any identifiable aggravation of injury because of the defect in the door latches. VWAG does not—at this time—argue that the instructions on the law given to the jury failed to present the issues on the necessity for proving "aggravation" of injury to the jury, but it does contend that the answers of the jury to the interrogatories were without evidentiary support by the standards imposed by the instructions on the law.

The heart of VWAG's contention is that notwithstanding that the very gist of plaintiffs' claims against it was that the defect in door design inflicted injuries on plaintiffs over and above those that they would have sustained had the doors been correctly designed (*Bolm v. Triumph Corp.,* 1973, 33 N.Y.2d 151, 159, 350 N.Y.S.2d 644, 305 N.E.2d 769), not only does the evidence fail to show any distinct amount of such enhanced or aggravated damages—leaving that a matter of speculation—but, on the contrary, it shows that plaintiffs' failure to wear their seat belts accounted for their ejection from the vehicle and thus precluded any finding by the jury that the design defect in the door was a factor in producing whatever aggravated damages there may have been (*Cf. Spier v. Barker,* 1974, 35 N.Y.2d 444, 451, 363 N.Y.S.2d 916, 323 N.E.2d 164 and footnote 3).

VWAG's argument in considerable part rests on the premise that plaintiff had and failed to sustain the burden of isolating the particular injury and consequent damage

specifically attributable to the defective door design, and it places much reliance in its argument on *Huddell v. Levin,* 3rd Cir. 1976, 537 F.2d 726, 737–738, holding that in "second collision" cases plaintiff must, in addition to showing that there was an available safe design, show, *first,* the extent of the injuries that would have been suffered if the safe design had been in use, and, *second,* must offer some method of establishing the extent of enhanced injuries attributable to the defective design. The Court said that the one clear thing in crashworthiness cases was (537 F.2d at 738)

"`. . . the automobile manufacturer is liable only for the enhanced injuries attributable to the defective product. This being the essence of the liability, we cannot agree that the burden of proof on that issue can properly be placed on the defendant manufacturer.`

"Without proof to establish what injuries would have resulted from a non-defective head restraint, the plaintiff could not and did not establish what injuries resulted from the alleged defect in the head restraint. Without such proof, the jury could not have properly assessed responsibility against [the defendant manufacturer] . . . ."

The Court rejected a concurrent tort liability analysis on the question-begging ground that the two successive torts in the "second collision" cases "do not implicate 'clearly established double fault' for the *same* occurrence" (emphasis in original). The Court, that is, rejected the rule in § 433B of the Restatement (Second) of Torts § 433B(1) and (2):

"(1) Except as stated in Subsections (2) and (3), the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff. .

(2) Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor."

And see Illustration 8. See, expressly rejecting the analysis in *Huddell, Fox v. Ford Motor Co.,* 10th Cir. 1978, 575 F.2d 775, 787; *Chrysler Corp. v. Todorovich,* Wyo. 1978, 580 P.2d 1123, 1131.

■ *The tort principles.*—It does not appear, on analysis, that the law applicable in "second collision" cases has the recherche complexity that VWAG suggests. The cases in the "second collision" field have, to be sure, been dogged by "enhancement" and "aggravation" language, but certainly the working out of the basis of liability in cases of this type turns entirely on zone of risk analysis, and not at all upon such fanciful analyses of damage ingredients and non-events as *Huddell* posits. *Cf. Fox v. Ford Motor Co.,* 1978, 575 F.2d 774, 787 (enhancement equated with proximate cause). The only novel issue in these cases has been the plain question, Must the manufacturer in designing his product make it safe against expectable misuse (such as a highway accident)? *Bolm v. Triumph Corp.,* 1973, 33 N.Y.2d 151, 159, 350 N.Y. S.2d 644, 651, 305 N.E.2d 769, 773, 774, said, bluntly,

"`. . . what possible justification is there for disallowing a claim against the manufacturer whose defective product results in injury after a foreseeable intervening cause? It is well settled that foreseeable intervening cause will not relieve a wrongdoer of liability in other situations [citations]. We can perceive no reason why a manufacturer of motor vehicles should be held to a lesser degree of liability. Accordingly, we reject the 'second collision rule' in favor of traditional rules of negligence and warranty.`"

*Micallef v. Miehle Co.,* 1976, 39 N.Y.2d 376, 385–386, 384 N.Y.S.2d 115, 348 N.E.2d 571, made even more explicit the general duty of a manufacturer so to design his product that it avoids unreasonable risk of harm to anyone using the product either in the manner of its intended use or in an unintended but foreseeable use.

■ The *Bolm* and other cases use the language of "aggravation" and "enhance-

ment" so that it seems to imply that unless there is demonstrable aggravation, the defendant goes free, although his liability is in principle based on a breach of duty that, while it does not occasion the accident which initiates the whole chain of damages, is nevertheless a factor in bringing about the aggregate of damage ultimately sustained. The language of enhancement and aggravation was, without objection, used throughout the charge in this case: the jury was asked to determine whether the defects "in design caused [plaintiffs'] injuries, sustained in the accident, to be worse than they would have been if the alleged defects in design had not existed." The jury was, however, also instructed that if it was "satisfied from the evidence that the injuries of one or other or both plaintiffs were definitely aggravated in fact by the design defect in the bus, but are also satisfied that it is not possible to determine from all the evidence how much of the injury and damage is due to the basic collision damage and how much to the aggravation due to design defect, then it is proper for you to answer by saying that the whole damage is due to the design defect, and that the whole damage is one for which both defendants are together liable." It had been made clear to plaintiffs at the commencement of the trial that they had the burden of proving what was called "the fact of damage", and that they could not rest simply on proof that there was a defect in design and that there were general damages arising in the accident which could not be definitely attributed to either of the two possible causes, that is, operator's negligence on the part of Valentine and design defect on the part of VWAG. See Restatement (Second) of Torts § 433B(2) quoted above and Illustration 2. It would appear, on reflection, that the charge was too favorable to VWAG in requiring a finding of some aggravation of damage rather than a finding that the defect in design was a factor in causing plaintiffs' injury and damage.

The underlying principle in these cases of uncertainty of measurement and identification is that enunciated in *Story Parchment Co. v. Paterson Parchment Paper Co.*, 1931, 282 U.S. 555, 562–563, 51 S.Ct. 248, 250–251, 75 L.Ed. 544, where the Court said:

> "It is true that there was uncertainty as to the extent of the damage, but there was none as to the fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount.

> \*　　\*　　\*　　\*　　\*　　\*

> "Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise."

VWAG's contentions do fairly address themselves to the "fact of damage", whether framed as a challenge to the sufficiency of the plaintiffs' evidence to carry the case to the jury or framed as an objection that the fact of damage due to VWAG's fault was not shown. But the fatal defect in VWAG's argument is that it wrongly assumes that plaintiffs had to show not only the fact but also the extent of their damage due to VWAG's fault. The evidence outlined above supports the jury's conclusion that plaintiffs were thrown from the van and that the injuries that they sustained were worsened by their being thrown from the van. So much, in the instant of the events' unfolding was "the prompt assurance of self-evidence." That is not to say that a contrary verdict, one in

VWAG's favor, would have had to be set aside as against the weight of the evidence. The jury had to evaluate the damage evidence which it heard to form a judgment about the distribution of physiological damage and pain and suffering as between the collision and rollover itself and, on the other hand, the ejection from the vehicle in the course of the rollover. None of the physiological injury and pain and suffering could be precisely quantified, nor quantified except within very wide limits. The problem required just the sixth sense, life-experience evaluation that has been traditionally—and gratefully—given over to the judgment of juries.

VWAG points out that the evidence indicated that Turi Caiazzo's right foot was injured by entanglement in the foot pedals, and that her shoulder damage happened when she was jarred backwards at impact; finally, it is argued, the evidence indicates that the injury to the right ankle was the worst of plaintiff Turi Caiazzo's injuries, and yet the jury made only a modest allocation of damage to the basic collision. But the evidence was also that the right foot injury reflected the application of a twisting component of force, and that the horizontal fracture in the left malleolus was not explained by entanglement in the foot pedals. The jury did not have to make the arguable inference that the right foot was entangled in the foot pedals, nor the inference that, if it was so entangled, it became so when Turi Caiazzo was jolted backwards rather than when she was thrown to one or the other side, and through the open doorway of the vehicle. Similarly, while the fracture of the scapula could well have been ascribed to a jolt against the seat back and the bulkhead, the jury was free to infer that it occurred in the course of ejection through contact with some other part of the car or with the ground. Turi Caiazzo's injuries were multiple; the allocation of damage awards to different aspects of those injuries was for the jury. It is enough that the evidence established the fact of damage and afforded a substantial basis for allocation of damage.

■ *The traditional rules.* *Bolm* directed application of the traditional rules. It has long been settled in New York that where distinct torts of two different persons contribute separate but indistinguishable amounts of damage to a single damage aggregate, both persons are liable for the whole of the damage. In *Slater v. Mersereau,* 1876, 64 N.Y. 138, 146, the Court said:

"Although they acted independently of each other, they did act at the same time in causing the damages, etc., each contributing toward it, and although the act of each, alone and in itself, might not have caused the entire injury, under the circumstances presented, there is no good reason why each should not be liable for the damages caused by the different acts of all."

■ After pointing out that there was no way of determining the separate injury caused by each tort-feasor the Court continued (64 N.Y. at 147):

"Here also the contractor and sub-contractors were separately negligent, and although such negligence was not concurrent, yet the negligence of both these parties contributed to produce the damages caused at one and the same time. It is no defense for a person against whom negligence which caused damage is proved, to prove that without fault on his part the same damages would have resulted from the act of another . . .."

Where two separate torts are committed at distinctly successive times but unite to produce an indivisible damage—such as death of a plaintiff's intestate—the tort-feasors are jointly and severally liable. *Hawkes v. Goll,* 2d Dept.1939, 256 App.Div. 940, 9 N.Y. S.2d 924, aff'd, 1939, 281 N.Y. 808, 24 N.E.2d 484. Mr. Justice Shapiro in a dissenting opinion expressed the general New York rule applicable in multiple tort-feasor cases in this language (*Thrower v. Smith,* 2d Dept.1978, 62 A.D.2d 907, 920, 406 N.Y. S.2d 513, 521)

"It is now well-settled law that where several defendants cause injuries to a plaintiff, but it cannot be determined

which injuries were caused by the defendants found to be negligent, each of the defendants is liable for all of the injuries . . . . Further, it is generally accepted that where several defendants, who are found to be tort-feasors, are guilty of acts, only one of which caused the injury, all are liable absent a showing as to whose act was [a] cause . . . ."

The Justice cited for the latter statement Restàtement (Second) of Torts § 433B(3).

■■■■ Where the specific injury caused by each of two successive torts is distinctly identifiable, and the first tort is not causally linked to the second, each tort-feasor is liable simply for the injury that his own tort caused; in the common case in which the first tort in point of time is in fact, and therefore in law, the cause of the whole damage including that identifiably caused by the second tort, the first tort-feasor is liable for the whole damage, the second only for the damage due to his wrong. *Cf. Zillman v. Meadowbrook Hospital Co., Inc.,* 2d Dept.1974, 45 A.D.2d 267, 358 N.Y.S.2d 466; *Dubicki v. Maresco,* 2d Dept.1978, 64 A.D.2d 645, 407 N.Y.S.2d 66; *cf. Wiseman v. 374 Realty Corp.,* 1st Dept.1976, 54 A.D.2d 119, 387 N.Y.S.2d 612. See cases dealing with "the same injury" concept under N.Y.C.P.L.R. § 1401; *Pezzella v. Catholic Medical Center,* 2d Dept.1976, 52 A.D.2d 596, 382 N.Y.S.2d 113; *Engram v. Kingston Hospital,* Ulster Co. 1975, 82 Misc.2d 540, 371 N.Y.S.2d 364. As the *Zillman* case makes clear the second of two successive torts may be such that it is not in the class of those tortious and nontortious consequences which normally follow from the commission of the first tort. And the victim of two successive torts may be found to be contributorily negligent in respect of the later of the two torts though he exercised due care up to the time of the occurrence of the first tort. See *Krauth v. Richmond Memorial Hospital,* 1st Dept.1963, 18 A.D.2d 908, aff'd 1963, 13 N.Y.2d 949, 244 N.Y.S.2d 318, 194 N.E.2d 133.

The immediate question is really the extent to which these now general principles apply to the claim of plaintiff against VWAG and the claims over of Valentine against VWAG and VWAG against Valentine. This is an *Erie Railroad v. Tompkins,* 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 case, but it must be conceded that the lore of "strict liability" and "second collision" tends to be generalized across state boundaries and to borrow precedent from the federal courts. But the bellwether in the second collision field has been *Larsen v. General Motors Corp.,* 8th Cir. 1968, 391 F.2d 495. The *Larsen* case, involved a claim that, because of defective design, the plaintiff had received injuries he would not otherwise have received or, alternatively, his injuries would not have been as severe if the design of the vehicle had not been defective. The Court in *Larsen* conceived that it was (391 F.2d at 504)

". . . imposing a duty on the manufacturer to use reasonable care in the design of its products to protect against an unreasonable risk of injury or enhancement of injury to a user of the product . . . ."

■■■ The law of New York neither imposes on a plaintiff the burden of proving the injuries that would have occurred from the first of two torts if the second had not occurred—a daunting task that could rarely be carried out successfully—nor would the law of New York confine the liability of the second tort-feasor to the instance in which the damages which its wrong inflicted were an identifiable and measurable addendum to the damages flowing from the earlier tort. That is clear from the New York cases cited above (supra pp. 602 603). As Judge Rosen, concurring, pointed out in *Huddell* (537 F.2d at 745), there is no reason at all for departing from the general law as it has been summarized into the Restatement (Second) of Torts § 433B(2); *cf. Wiseman v. 374 Realty Corp.,* 1st Dept.1976, 54 A.D.2d 119, 387 N.Y.S.2d 612; *Oberman v. Alexander's Rent-A-Car,* 1st Dept.1977, 56 A.D.2d 814, 392 N.Y.S.2d 662.

In *Navigazione Libera Triestina S.A. v. Newton Creek Towing Co.,* 2d Cir. 1938, 98 F.2d 694, 697, Judge Learned Hand rejected the argument that the injured person has

the burden of showing that the tort-feasor whom he pursues caused the damage and of showing the amount of damage he caused. He said

"On the other hand, since it is impossible to prove what share the act of either of the tort feasors contributed, or whether it contributed any at all, if this prevailed, each would escape—an absurd result. To overcome this difficulty, the law imposes upon each tort feasor the impossible burden of proof, contenting itself with limiting the injured person's total recovery to one indemnity. The situation is the same when one of the two contributing factors is not the result of an actionable fault: again, the single tort feasor cannot be allowed to escape through the meshes of a logical net. He is a wrongdoer; let him unravel the casuistries resulting from his wrong."

See also *Higginbotham v. Ford Motor Co.,* 5th Cir. 1976, 540 F.2d 762, 773–774. See, more generally, 2F.Harper & F.James, The Law of Torts, § 20.3, particularly at pp. 1130–1131. See Note, *Apportionment of Damages in the "Second Collision"* Case, 1977, 63 Va.L.Rev. 475, 499–501.

■ *The seat-belt "defense."*—VWAG makes the separate argument that plaintiffs' failure to wear their seat belts was contributory negligence that must bar their recovery since the experts on both sides testified that wearing the belts would have prevented ejection from the van. VWAG agrees that ordinarily failure to wear a seat belt only mitigates damages: *Spier v. Barker,* 1974, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164, held that failure to wear a seat belt "does not constitute negligence *per se.*" *Spier,* however, did hold that the jury was to consider the failure to use an available seat belt in assessing the damages where defendant showed that the seat belt would have prevented at least a portion of the injuries. The Court answered the argument that the jury would be unable to segregate the injuries caused by impact from those caused by failure to use the seat belt by saying (35 N.Y.2d at 452–453, 363 N.Y.S.2d at 922, 323 N.E.2d at 169)

"In addition to underestimating the abilities of those trained in the field of accident reconstruction, this argument fails to consider other instances in which the jury is permitted to apportion damages (i. e., as between an original tort-feasor and a physician who negligently treats the original injury). Furthermore, if the defendant is unable to show that the seat belt would have prevented some of the plaintiff's injuries, then the trial court ought not submit the issue to the jury."

The case as it affects VWAG appears at first blush distinctly different. In such a second collision case as the present one, must not the failure to wear a seat belt afford the defendant a substantive defense of contributory negligence, since the risk that well-designed door latches protect against is the risk of ejection, and VWAG here had provided seat belts that protected against exactly that ejection risk's eventuating? Failure to use the belts that would have prevented the ejection was necessarily, VWAG argues, negligence contributing to the happening of the only accident— ejection—with respect to which it was at fault. *Velez v. Craine & Clark Lumber Corp.,* 1973, 33 N.Y.2d 117, 350 N.Y.S.2d 617, 305 N.E.2d 750.

■ Exactly the contrary conclusion must be deduced from the underlying theory of the manufacturer's liability in these second collision cases: the manufacturer's design responsibilities derive from the realities of the actual use of their products. The failure of riders in vehicles to use seat belts is plainly within the range of "reasonable apprehension" of the manufacturer. (*Bolm,* 33 N.Y.2d at 160, 350 N.Y.S.2d 644, 305 N.E.2d 769). The door design is defective in part because it does not adequately safeguard the interest of the expectably careless rider who fails to fasten the available seat belt. That is the lesson not only of the *Bolm* case (in its acceptance of the principle of the *Larsen* case) but, more emphatically of the *Micallef* case, *supra,* 39 N.Y.2d at 385–386, 384 N.Y.S.2d 115, 348 N.E.2d 571. *Cf. Melia v. Ford Motor Co.,* 8th Cir. 1976, 534 F.2d 795, 799–800.

In addition, as indicated earlier, the jury had before it evidence from which it could infer that wearing the belts would not have averted all injury from the opening of the doors during the rollover. VWAG is in part here presenting in different form its argument that the evidence did not furnish a basis for determining that substantial damages would have been sustained if the belts had been worn. But the burden of proof is on VWAG under the *Spier* case, and the jury did accord weight to its evidence. While *Vizzini v. Ford Motor Co.,* 3rd Cir. 1977, 569 F.2d 754, is based on principles which New York law has rejected, the concurring and dissenting opinion does appear to express the New York law and relies heavily on the *Spier* case; Judge Weis said (569 F.2d at 771):

> "I am not persuaded by the objection that acceptance of seat belt testimony by a jury will require speculation on the proper amount of damages. It is naive indeed to say that the law does not permit juries to speculate on·damages when daily they are asked to determine the value of future pain and suffering. There are few things more uncertain in this world than the length of a particular person's life, yet juries regularly determine damages in death cases. Indeed, in this very case that problem was submitted to the jury. Damage apportionment in a seat belt case would not be more conjectural."

*Wilson v. Volkswagen of America, Inc.,* E.D.Va., 1978, 455 F.Supp. 1368, 1372–1373, explicitly follows the New York rule.

VWAG cites *Endicott v. Nissan Motor Corp.,* 1977, 73 Cal.App.3d 917, 141 Cal.Rptr. 95, where plaintiff sued the manufacturer alone alleging only that his seat belt broke in the course of a single car accident. The trial court declined to charge that if the belt was defective, burst in the accident, and failed to constrain the plaintiff's motion, then the defendant had to prove affirmatively the injuries that plaintiff would have sustained if the belt had not broken. The court instead told the jury that plaintiff had the burden of proving that the rupture of the seat belt enhanced his inju-

ries. The appellate court sustained the jury's verdict for the defendant. Plainly a New York court would have given the case to the jury upon an instruction that if they found the belt defective and that the defect in the belt was in whole or in part a cause of plaintiff's injury and damage, they should find for the plaintiff, determining from all the evidence the extent of the injuries caused by the rupture of the seat belt. The "enhancement" charge simply deprived the plaintiff of his day in court. Contrast *Navigazione Libera Triestina S.A. v. Newton Creek Towing Co.,* quoted *supra* p. 604, Restatement (Second) of Torts § 433B; *American Motorcycle Ass'n v. Superior Court,* 1978, 20 Cal.3d 578, 146 Cal. Rptr. 182, 578 P.2d 899: The *Spier* case recognized the necessity for apportionment of damages rather than a pursuit of the will-o'-the-wisp of specifically identifiable injury (35 N.Y.2d at 452–453). `Cf. Langford v. Chrysler Motor Corp.,* E.D.N.Y.1974, 373 F.Supp. 1251, 1255–1256 (denying any mitigation based on failure to use seat belt, citing *Spier* in the court below), aff'd, 2d Cir. 1975, 513 F.2d 1121. But see *Benner v. Interstate Container Corp.,* E.D.Pa.1977, 73 F.R.D. 502, 504. See Annotations, 1967, 13 A.L.R.3d 1428, and, 1977, 80 A.L.R.3d 1033.

 *Cousins v. Instrument Flyers, Inc.,* 1st Dept.1977, 58 A.D.2d 336, 396 N.Y. S.2d 655, aff'd 1978, 44 N.Y.2d 698, 405 N.Y.S.2d 441, 376 N.E.2d 914 does not contribute to VWAG's argument. The facts are not fully reported but it seems that plaintiff rented a Piper airplane from Instrument Flyers and was injured when he crash-landed the plane enroute to an airport in Ohio. Apparently the sole claim made was that the aircraft's lack of shoulder harnesses and other crash-worthiness features caused plaintiff to sustain injuries in excess of those he would have suffered had the aircraft been crash-worthy. The court gave the case to the jury as a strict liability case and instructed it on contributory negligence as a defense; the jury found for the defendants. Plaintiff argued on appeal that *Spier* required the court to charge that his "contributory negligence" went only to mit-

igation of damage in such a case. The court held that the *Spier* mitigation of damages principle should not be considered on the issue of liability; that proposition, the court said "has no discernible relation to a theory that would remove contributory negligence as a bar to secondary or aggravated injuries" (*Codling v. Paglia,* 1973, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622). In *Cousins* the defect consisting in the absence of a shoulder harness, was manifest to the plaintiff, who had—negligently, the jury found—used such aircraft twenty-eight times. While *Cousins* may have overlooked *Micallef v. Miehle Co.,* 1976, 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571, the *Cousins* case is inapplicable here: plaintiffs charge defective door catches, not the absence of seat belts. The failure to use the belts was properly considered in mitigation of the damages flowing from the other wrong, on the familiar principle that a tortfeasor is liable for the proximate but not for the avoidable consequences of his tort. In the present case the jury were very particularly charged on the issue of contributory negligence in respect of the door latch defect: the jury found that neither plaintiff could have discovered in the exercise of reasonable care and have perceived the danger of the design defect in the door. That precisely parallels the issue of contributory negligence which the trial judge must have given to the jury in the *Cousins* case.

■ There appears to be a very direct cause and effect connection between the opening of the doors and the failure to use the seat belt, and there is always the argument that the defendant's vehicle should be viewed as a whole, given the benefit, as it were, of the safeguard which one of its elements supplied against a deficiency in another of its elements. But, again, the *Spier* case is clear that the automobilist is not negligent in failing to wear a seat belt, and that anticipatable omission is one of the hazards that safe door lock designs are calculated to neutralize. The manufacturer is entitled only to the *Spier* doctrine of avoidable damage consequences.

*Biss v. Tenneco, Inc.,* 4th Dept.1978, 64 A.D.2d 204, 207–208, 409 N.Y.S.2d 874, 876–877 holds that, because the risk of rollover is a function of the type of job-site on which a loader is to be used, as a matter of law a loader is not defective because it does not have a rollover cab installed on it. The court considered that it was enough for the manufacturer and dealer to offer the purchaser the option of buying the rollover cab as an added safety feature.

It follows from what has been said that the verdict comprised in the answers to the interrogatories cannot be set aside and a verdict directed for either defendant, nor can the answers to the interrogatories be set aside as being against the weight of the evidence.

*The amount of the damage awards.*—Defendants' motions include also motions to set the damage awards aside on the ground that they are excessive in amount. When a trial is protracted to any degree and experts are brought in to train a substantial apparatus of scientific learning on the accident issues, the importance evidently attached to the case by the parties must translate into an expansive view of the damage evidence; where the defendant is an automobile manufacturer, it may be, no tempering factor intrudes itself: perhaps each verdict is a communication to automobile manufacturers generally. Both plaintiffs were dramatically effective witnesses on the issue of their personal injuries, and, particularly as affected Turi Caiazzo, her pain and suffering. The damage awards could not include anything for lost earnings or diminution in earning capacity; they were not claimed and the jury did not even learn the plaintiffs' occupations.

■ The evidence does not support an inference that Frank Caiazzo sustained any material impairment of physical abilities, or any impairment in any bodily function, and his testimony with respect to continuing occasional pain did not suggest any serious degree of discomfort. The award of $200,000 was so grossly excessive that it cannot in conscience be permitted to stand. On all the evidence the maximum reasonable

award for the whole amount of plaintiff Frank Caiazzo's damages is $100,000.

■ The case of plaintiff Turi Caiazzo differs principally because of the credible evidence of pain in the first stages of hospitalization, the fairly protracted period of immobilization after her release from the hospital, the continuance of episodes of pain, the narrowing of her recreational activities, and the evidence of impaired function in her right foot and, to some extent, in her left foot. However, she has been able to carry on as a wife and mother and is by no means incapacitated in any substantial sense. It may be that further orthopedic surgery is indicated, and the evidence embraced the costs of it but there is no basis for an inference that such surgery, or other conservative measures appropriate to her condition, will not in substantial degree mitigate if not eliminate her surviving complaints. On all of the evidence the maximum reasonable award for the whole amount of the damages of plaintiff Turi Caiazzo is $400,000.

While the maxima found are very substantially less than the jury's awards, the jury's answers to the interrogatories clearly indicate that they dealt discriminatingly with the issues before them and were not guided, or influenced by passion or prejudice. Nothing in the answers suggests that the answers germane to the issues of liability should be set aside.

For reasons indicated earlier in this memorandum there is no reason to change the allowances which the jury made for failure to use the seat belt nor to disturb the apportionment of damages as between the defendants. Under the jury's awards the judgment would have been that plaintiff Turi Caiazzo recover $562,500 of defendant Valentine and $375,000 of defendant VWAG and that plaintiff Frank Caiazzo recover $150,000 of defendant Valentine and $112,500 against defendant VWAG. Those damage awards will be set aside and a new trial will be ordered on the issue of damages unless plaintiff Turi Caiazzo remits $350,000 of the total award so that the judgment in her favor against Valentine

would be $300,000, and against VWAG would be $200,000, and unless the plaintiff Frank Caiazzo remits $100,000 of the total award so that the judgment in his favor against defendant Valentine would be $75,000 and against VWAG would be $56,250.

■ Counsel will understand that if plaintiffs accept the remittitur, defendant retains its right to appeal on all the issues in the case. See *Southern Ry. v. Neese,* 4th Cir. 1954, 216 F.2d 772, rev'd, *sub nom. Neese v. Southern Ry.,* 1955, 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60. If plaintiffs do enter into the remittitur, they cannot appeal the remittitur order. *Donovan v. Penn Shipping Co.,* 1977, 429 U.S. 648, 97 S.Ct. 835, 51 L.Ed.2d 112.

*The defendants' cross-claims.*—Defendant Valentine has moved for judgment over against defendant VWAG in the amount of the aggregate damage found by the jury to be due to the defect in the vehicle. Defendant VWAG has pointed out that, although the parties defendant agreed that the cross-claims would be disposed of after verdict and not submitted to the jury, there has been no agreement that the record is closed on the claims over. The interrogatories, VWAG points out, do not ask the comparative culpability questions needed to resolve the cross-claims.

Some attention to *Dole v. Dow* and C.P. L.R. § 1401 *et seq.* at this point may help to solve the issues between the parties defendant. Both *Dole v. Dow Chemical Co.,* 1972, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288, and Section 1401 deal with "same injury" or same harm cases. In *Dole v. Dow* different negligences of two defendants were involved in bringing about the death of the workman. Apportionment of liability between the defendants was in terms of "differential culpability", something not radically different from the "factual disparity" in "delinquency" of earlier law, nor from the "relative responsibility" which the court treated as governing the rights of apportionment. So any apportionment of responsibility between defendants here would seem to relate only to that harm for which both are responsible, that is, that

part of the aggregate damage awarded against defendant Valentine which was also awarded against VWAG on the basis of its "second collision" culpability. ·

The troublesome case of *Zillman v. Meadowbrook Hospital Co.,* 2d Dept.1974, 45 A.D.2d 267, 358 N.Y.S.2d 466, decided before amended Section 1401 became effective, is explicit that the *Dole v. Dow* rule of apportionment can apply in cases involving independent and successive tort-feasors, where the first tort-feasor's conduct not only injures the grievant but makes it likely that the grievant will sustain further injuries at the hands of the second tort-feasor: the second tort is a proximate consequence of the first. See 45 A.D.2d at 270, 358 N.Y.S.2d at 469–470. While the court in *Zillman* did not regard the two torts there involved as connected by cause and effect, it recognized that the first tort-feasor would be liable to the injured plaintiff not only for its own negligent acts but also for any aggravation of the plaintiff's condition caused by the second tort-feasor although as between themselves the first tort-feasor would not be responsible for the second tort-feasor's conduct. The court, finally, noted that since in the case before it the second tort-feasor could not in any case be made liable in damages to the plaintiff for the first tort-feasor's negligence it could not have any claim over against the first tort-feasor. That last very doubtful conception appears to be carried on into *Pezzella v. Catholic Medical Center,* 52 A.D.2d 596, 382 N.Y.S.2d 113; the court there dismissed a second tort-feasor's claim over against the first tort-feasor on the authority of *Zillman* although it would seem that in *Pezzella* the first tort-feasor would have been liable for the damages flowing from the second tort, which was a claim for negligent treatment of the injury inflicted by the first tort.

*Wiseman v. Presbyterian Hospital,* 1st Dept.1976, 54 A.D.2d 119, 387 N.Y.S.2d 612, may well, as Professor Farrell has suggested (1978, 29 Syracuse L.Rev. 449, 491), be inconsistent with *Zillman* in refusing to dismiss the cross-claims of subsequent tortfeasors (a treating hospital and its physicians) against the first tort-feasor (the owner of the building in which plaintiff sustained a severely injurious fall on a defective stairway). The court approved of so much of *Zillman* as said that apportionment among independent and successive tort-feasors might be permissible, but distinguished *Zillman's* denial of the right of the second tort-feasor to claim apportionment from the first as depending upon the court's earlier statement that the second tort was not one that had been rendered likely by the first tort. *Wiseman* cannot confidently be treated as a clear holding that in this case the second tort-feasor, liable only for a part of the whole damage, can claim over against the first tort-feasor on a comparative culpability basis; in *Wiseman,* the court pointed out, the parties were treating the case as one of indivisible damage, death, which the acts of each tort-feasor were claimed without out distinction to have brought about. *Dubicki v. Maresco,* 2d Dept.1978, 64 A.D.2d 645, 407 N.Y.S.2d 66, followed *Zillman* in holding that the third of three tort-feasors, liable only for his identifiable aggravation of the original injury, could not claim over against the first or second tort-feasors. There a negligently inflicted automobile injury was first maltreated at a hospital and then was additionally maltreated by a physician; the injured plaintiff was held to be entitled to a judgment against the automobilist for the whole of his damages but only for the final aggravation of damage as against the physician. The first step said the Court, should have been to sever the damage into three quanta: those sustained solely through the negligence of the automobilist, those sustained solely through the hospital's malpractice and those sustained solely through the doctor's malpractice. Then the two latter quanta of damage should have been separately apportioned: the damages due solely to the hospital's malpractice should have been apportioned between the automobilist and the hospital; the damages attributable solely to the malpractice of the doctor should have been apportioned between the automobilist, the hospital and the doctor. The result of the

review in *Dubicki,* however, followed a different pattern because of the procedural posture of the case in the appellate court. It is not clear that the analysis is not closer to *Wiseman* than to *Zillman.*

▮ The theory of *Dole v. Dow* and of Sections 1401–1403 seems to require a determination of relative fault, that is a determination of relative responsibility for bringing about the event which caused the injury for which both tort-feasors are being held liable. *Cf. Gannon Personnel Agency v. City of New York,* 1st Dept.1977, 57 A.D.2d 538, 394 N.Y.S.2d 5. That is plainly what *Kelly v. Long Island Lighting Co.,* 1972, 31 N.Y.2d 25, 29–30, 334 N.Y.S.2d 851, 286 N.E.2d 241 calls for. In a word, it is only the injury and related damage for which two defendants are in common liable that can be the subject of a *Dole v. Dow* apportionment of liability in accordance with fault.

▮ So, in the present case, it would appear that the whole amount for which VWAG is liable cannot be apportioned to it as between it and Valentine since Valentine shares responsibility for the whole of that damage liability. The question is, What is the relative contribution of fault of the two defendants to that part of the damage for which VWAG has been held liable by the jury's answer to the interrogatories? None of the interrogatories asked the jury to determine relative fault as between defendants. Counsel may consider that further evidence might throw light on this issue and might, in any event, wish to submit argument precisely directed to evaluation of relative fault in the light of the present determination.