■ PEGGY A. LANZA et al., Appellants, v PARKEAST HOSPITAL et al., Respondents. — Order, Supreme Court, New York County (D. B. Crew, III, J.), entered June 16, 1983, granting defendant Bortot's motion at end of plaintiffs' case on special issue for failure of plaintiffs to establish a prima facie case, is unanimously reversed, on the law, and the matter is remanded to the trial court for further proceedings, with costs to plaintiffs. ¶ A trial by jury was had on the special issue as to the nature of the relationship between defendant Dr. Bortot and the East Gate Medical and Surgical Group (East Gate Group) with respect to whether or not that relationship imposes vicarious liability on Dr. Bortot for the negligence of any employees (or doctors) of East Gate Group. The issue was tried before a Judge and jury, and at the close of plaintiffs' case, the court granted defendant's motion to dismiss for failure to establish a prima facie case. We think this was error. ¶ In our view, there was a question of fact, or a mixed question of law and fact, which should have been submitted to the jury, whether the group of doctors (including Dr. Bortot), practicing as East Gate Medical and Surgical Group, held themselves out to the public as a joint venture or a group of doctors practicing jointly in the rendition of medical services to patients who came to East Gate Group and, if so, whether such doctors are estopped from claiming that each of them was an independent contractor responsible only for his own torts, and not liable for malpractice of other doctors of the group or torts of other purported employees of the group. (*Hannon v Siegel-Cooper Co.,* 167 NY 244, 246.) ¶ There was evidence that all the doctors practiced under the collective name East Gate Medical and Surgical Group; that at least with Dr. Bortot's implicit consent, the literature of East Gate Group, including the business cards, did not include the names of any particular doctors. Further, the brochure of East Gate Group referred to itself as "A hospital affiliated service"; "an independent hospital affiliated medical abortion facility"; it said, "In order to maintain the highest standard of medical care, *we* have adopted a 'mini hospital' approach. *Supervised by a medical director,* all procedures are performed by Board Certified Gynecologist-Obstetricians with an Anaesthesiologist in attendance in hospital equipped operating rooms. *Our* trained counseling staff meets with every patient to discuss the medical procedure and is available throughout the patient's stay. Postoperatively, all patients are given strong, graphic contraceptive advice and counseling." (Italics added.) It referred to "[o]*ur* permanent staff" consisting of internists, gynecologists, anaesthesiologists, pathologist, nurses, etc.; "[o]*ur* procedure fee" covered all costs, including doctors, medication, procedures, etc. (Italics added.) ¶ There was further testimony that plaintiff came into this facility for an abortion, did not ask for any particular doctor and did not know the name of the doctor who performed the abortion. She paid the receptionist in advance for all care, including the abortion and aftercare; some of this aftercare (not complained of) was rendered by defendant Dr. Bortot for no additional fee. The jury could thus have found the case to be analogous to the situation in *Mduba v Benedictine Hosp.* (52 AD2d 450, 453) where the court said: "This is not a situation where the decedent engaged Dr. Bitash in defendant's hospital. The decedent entered the hospital for hospital treatment. The defendant hospital undertook to treat decedent for a charge and furnished the doctors and staff to render that treatment * * * Patients entering the hospital through the emergency room, could properly assume that the treating doctors and staff of the hospital were acting on behalf of the hospital. Such patients are not bound by secret limitations as are contained in

a private contract between the hospital and the doctor. Defendant held itself out to the public offering and rendering hospital services". ¶ Whether it was the group of doctors, including Dr. Bortot, or only the landlord corporation 800 East Gate Corp., or both, who so held themselves out, was also a question of fact for the jury. ¶ It was therefore error for the court to take the issues away from the jury and resolve them as a question of law. Concur — Kupferman, J. P., Asch, Silverman and Kassal, JJ.