(January 8, 1985)

■ BIRDELL HILL et al., Respondents, v ST. CLARE'S HOSPITAL et al., Appellants, et al., Defendant. — Judgment, Supreme Court, New York County (David Edwards, J.), entered June 16, 1983, which *inter alia,* denied defendants', St. Clare's Hospital and Rudolph F. Bono, postverdict motion for various relief, is affirmed, without costs.

We are unanimous in our view that the jury's verdict and the trial court's disposition of the postverdict motion were correct in all respects except as to the finding of vicarious liability as against Dr. Bono. Our dissenting brethren would reverse this determination as a matter of law.

Our review of this record however persuades us that sufficient evidence was presented at trial to warrant the submission to the

jury for its determination, as a question of fact, the issue of whether the operation of "The Benjamin A. Gilbert Medical Clinic" (clinic) by Dr. Bono was such as to properly impose vicarious liability upon him, as the owner of the clinic, for the negligent acts of Dr. Carranza, the doctor who actually treated plaintiff at the clinic. (*Lanza v Parkeast Hosp.*, 102 AD2d 741; *Mduba v Benedictine Hosp.*, 52 AD2d 450, 453.)

It is undisputed that Drs. Carranza, De Nalfi and Bono conducted their medical practice as "The Benjamin A. Gilbert Medical Clinic". Dr. Bono testified that he owned the clinic, that he paid the rent, the salaries of the nonmedical personnel and the overhead expenses. He further conceded that he "allowed Drs. Carranza and De Nalfi, to take $400 as their draw". He exercised control over the hours during which Drs. Carranza and De Nalfi would be present at the clinic by suggesting that they cover the office on a preset basis so that one wouldn't be coming in for an hour a day and the other eight hours a day and testified that he could dismiss the doctors if dissatisfied with their work. The evidence further demonstrated that patients coming to the clinic would be seen by the doctor then present and while they would likely see the same doctor on subsequent visits, if that doctor wasn't there or was otherwise busy they would be seen by whatever doctor was available. Thus, the jury here could have found this case to be analogous to *Mduba v Benedictine Hosp.* (52 AD2d 450, 453, *supra*) and *Lanza v Parkeast Hosp.* (102 AD2d 741, *supra*).

What was observed by the courts in those cases is equally applicable here and can be paraphrased thusly: This is not a situation where the plaintiff engaged Dr. Carranza in Dr. Bono's clinic. The plaintiff entered the clinic for medical treatment and the clinic undertook to treat the plaintiff for a charge and furnished the doctors and the staff to render that treatment. Patients entering the clinic could properly assume that the treating doctors and staff of the clinic were acting on behalf of the clinic. Such patients are not bound by secret limitations as are contained in a private contract between the clinic and the doctor. The clinic held itself out to the public, offering and rendering medical services. (*Lanza v Parkeast Hosp.*, 102 AD2d 741, *supra*.) We said in *Parkeast* that it was error for the court to take the issues away from the jury and resolve them as a matter of law. Here the issues were properly submitted to the jury under a charge to which no proper objection was taken. The jury has determined the issue in favor of the plaintiffs and that determination should not be disturbed. Concur — Ross, Milonas and Alexander, JJ.

Murphy, P. J., and Carro, J., dissent in part and concur in part in a memorandum by Carro, J., as follows: While there can be no dispute as to the jury's finding of malpractice by the hospital and the physicians who subsequently treated plaintiff, the finding of liability on the part of Dr. Bono is against the weight of the evidence and should be set aside. Indeed, an almost identical situation was presented in *Graddy v New York Med. Coll.* (19 AD2d 426, 428, mot to dismiss app den 13 NY2d 1175), where this court dismissed a complaint against one Dr. Street, "who took no part in the medical or surgical management of plaintiff's treatment, but who had office and financial arrangements with Dr. Bell in the practice of medicine." ([Per Bergan, J.]; see, also, *Connell v Hayden,* 83 AD2d 30, 52-54.)

The testimony showed that Dr. Bono had a friendship with Dr. Benjamin Gilbert, a physician who had practiced in the theater district for many years. During the summer of 1972, while Dr. Gilbert was recuperating from surgery, the West 45th Street building where he had his offices was demolished. Dr. Gilbert requested Dr. Bono to put Gilbert's name on his (Bono's) office door so the public would not forget it during Gilbert's convalescence. The two doctors who had worked with Dr. Gilbert also approached Dr. Bono and asked if they might share office space. Dr. Bono agreed to both of these requests and subsequently opened a set of offices with the name "The Benjamin A. Gilbert Medical Clinic" on the door. It was anticipated at that time that Dr. Gilbert would return to practice, but he never did, dying in 1973.

Bono's agreement with the two doctors from Gilbert's old office — Carranza and De Nalfi — was that he would provide the space, a receptionist and secretarial help and they would pay rent to him. In fact, Dr. Carranza's practice (for the scant three months he was there) was so slow that Dr. Bono had to advance him money each week. And, while each doctor used "The Benjamin A. Gilbert Medical Clinic" stationery, each only listed himself underneath that heading.

Dr. Bono saw his own patients of long standing and patients of Dr. Gilbert, if they so wished after being told of Dr. Gilbert's illness. Similarly, Dr. Carranza saw his own patients and former Gilbert patients. If Dr. Bono was not there and a patient agreed to see Dr. Carranza, the latter would keep the fee for that visit.

Here, it was conceded that Dr. Bono never once saw plaintiff or was consulted about his injuries. The evidence clearly shows that each physician, although accommodating to the other's patients in the absence of one of the doctors, was nonetheless a

sole practitioner. (Cf. *Graddy v New York Med. Coll., supra,* at p 428.) Sharing a secretary and facilities does not prove a joint venture estopping Bono "from claiming that each of them was an independent contractor responsible only for his own torts, and not liable for malpractice of other doctors of the group or torts of other purported employees of the group. (*Hanon v Siegel-Cooper Co.,* 167 NY 244, 246.)" (*Lanza v Parkeast Hosp.,* 102 AD2d 741.) As observed in the *Graddy* case,

"Although the rule of liability is broadening out in this area, we think it ought not to be extended to rest on a situation where there is neither a legal nor an actual control of the treating physician by the other physician and the relationship between them upon which responsibility is sought to be imputed turns upon a shared office and an agreement to service each other's patients * * *

"This is something less, and quite different from, a relationship of master and servant or agency upon which vicarious liability has thus far rested. The implications of such an enlarged liability would tend to discourage a physician from arranging to have another care for his patients on his illness or absence and thus curtail the availability of medical service." (19 AD2d, *supra,* at p 430; accord *Mduba v Benedictine Hosp.,* 52 AD2d 450, 452 ["The test employed is one of control in respect to the manner in which the work is to be done (citations omitted)"]; *Rivera v Bronx-Lebanon Hosp. Center,* 70 AD2d 794, 796 ["The answer lies in the degree of control exercised"].) Absent any proof of tangible control by Dr. Bono over the methods or quality of the medical services rendered by Doctors Carranza and De Nalfi, the jury was unjustified in finding, in the words of the interrogatory, that "Dr. Bono cause[d] to be furnished to the plaintiff, Birdell Hill, the medical diagnosis and treatment of Dr. William H. Carranza and Dr. De Nalfi." (Cf. *Matter of Morton,* 284 NY 167, 172; *Graddy v New York Med. Coll., supra.*)

In all other respects we concur with the majority affirmance, inclusive of the trial court's refusal to allow an offset in the amount of some or all of the settlement previously made between plaintiffs and the elevator company.* Our reasons differ somewhat, however, since we believe this case falls squarely within the general rule that a successive tort-feasor may not seek contribution from a prior tort-feasor. (*Zillman v*

---

\* Actually, the settling tort-feasors in the first action, arising from the injuries sustained because of a malfunctioning elevator, were the Empire Elevator Corp., Wagnell Realty, Inc., Wagnell Great Northern Syndicate, New Northern Hotel Corp. and the M.J.H. Gear and Tool Corp.

*Meadowbrook Hosp. Co.,* 45 AD2d 267, 270; *Kucinski v Rish,* 108 Misc 2d 188.) True, the holding in *Zillman* has been limited somewhat by the subsequent amendment and construction of CPLR 1401 (see, e.g., *Wiseman v 374 Realty Corp.,* 54 AD2d 119, 121). However, the *Zillman* rationale is still perfectly valid for situations such as now before us since the test announced in *Wiseman* is satisfied: there exist "(a) two separate injuries with the second not necessarily resulting from the first, and (b) an ability to delimit the injuries caused by the subsequent tort-feasor[s]." (54 AD2d, *supra,* at p 122 [per Murphy, P. J.].) Clearly the elevator accident is separate and distinct from the malpractice which aggravated plaintiff's injuries. This is not a case where the initial injuries were fatal, and thus requires a legal distinction of *Zillman.* (*Wiseman v 374 Realty Corp., supra,* at p 122.) It was possible to, and the trial court did, "delimit the injuries" by repeatedly instructing the jury that their assessment could only encompass the extent to which plaintiff's "preexisting conditions were enhanced, aggravated, further injured, by the malpractice of the defendants so as to cause him additional suffering, disability and permanency of suffering and disability".

Given the repeated care with which the court so instructed the jury, I see no basis for the subsequent malpracticing tort-feasor(s) to seek contribution out of the prior settlement. (Cf. *Bergan v Home for Incurables,* 75 AD2d 762, 763.)