■ JAMES RUANE, Appellant, v DOUGLAS COOPER et al., Respondents.—Order of the Supreme Court, Bronx County (Anthony Mercorella, J.), entered January 30, 1984, which granted the motion of defendants-respondents Drs. Cooper and Waltz for summary judgment dismissing the complaint against them on Statute of Limitations grounds, unanimously reversed, on the law, without costs, and the motion denied.

Plaintiff-appellant James Ruane is 36 years old and has suffered from cerebral palsy since birth. Nevertheless, he managed to work and also to walk short distances with the aid of crutches. In 1975, Mr. Ruane heard about the technique of implanting electrodes in the brain to stimulate the cerebellar cortex in people with cerebral palsy. He contacted respondent Dr. Cooper's office. Dr. Cooper invented the technique and was director of the Institute of Neuroscience. Mr. Ruane met with Dr. Cooper and respondent Dr. Amin. Later, in April 1976, Dr. Amin implanted the electrodes. In July 1977, Mr. Ruane went back to Dr. Amin who checked the implanted equipment. Dr. Amin determined a second operation was

necessary. In February 1978, Dr. Amin performed the second operation. Sometime thereafter Mr. Ruane alleges, hydrocephalus—a buildup of water on the brain—occurred. As a result, Mr. Ruane claims, he is permanently confined to a wheelchair and lost total vision in his left eye.

Drs. Cooper and Amin and the third respondent, Dr. Waltz, were the senior doctors at the Institute of Neuroscience. This case centers on whether the three doctors, practicing at the Institute of Neuroscience, held themselves out to the public as a joint venture. If they did, then the doctors could be estopped from claiming that each was an independent contractor responsible only for his own torts. This has relevance because Mr. Ruane claims his timely service of a summons and complaint on Dr. Amin also constitutes timely service on Drs. Cooper and Waltz. Special Term found that defendants Cooper, Waltz and Amin were not sufficiently united in interest such that timely service on one constituted timely service on all. We find that questions of fact exist and that summary judgment was not warranted and, therefore, we reverse.

The record indicates that (1) Mr. Ruane was a patient of the Institute and did not engage any particular doctor to treat him; (2) the doctors in the Institute did not have private patients; (3) Dr. Waltz was Mr. Ruane's admitting doctor and visited Mr. Ruane on his rounds; (4) Drs. Amin and Waltz were present when Mr. Ruane was hooked up to certain equipment after the operation; (5) Dr. Cooper examined Mr. Ruane in connection with the operations; and (6) a letter signed by Dr. Cooper was sent to Mr. Ruane in March 1978, advising him that he and Dr. Amin had "transferred our service" to a new location and "strongly recommend[ing]" that Mr. Ruane go in for a reexamination.

From the above, questions arise which should be answered by a jury. For example, whether Drs. Cooper, Waltz and Amin practiced as the Institute of Neurological Science, and "held themselves out to the public as a joint venture or a group of doctors practicing jointly in the rendition of medical services to patients who came to [the Institute]" (Lanza v Parkeast Hosp., 102 AD2d 741). If so, the doctors could be vicariously liable for one another's malpractice. (Supra; see also, Mduba v Benedictine Hosp., 52 AD2d 450.) Because vicarious liability would afford each doctor the same defenses to Mr. Ruane's claim, they would stand or fall together, thus uniting them in interest for Statute of Limitations purposes under CPLR 203 (b). (Connell v Hayden, 83 AD2d 30, 39-45.) If Mr. Ruane had been a patient of the entire medical group and not of any one

doctor in it then their unity of interest binds them to the continuous treatment doctrine which, in turn, would toll the Statute of Limitations as to Drs. Cooper and Waltz. *(See, Watkins v Fromm,* 108 AD2d 233.) Concur—Kupferman, J. P., Sullivan, Ross, Milonas and Kassal, JJ.