MARY LOU DOHERTY & another[1] *vs.* SAMUEL HELLMAN & others.[2]

Middlesex. November 6, 1989. - December 18, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Negligence*, Medical malpractice. *Doctor*, Employment. *Medical Malpractice*, Vicarious liability.

On a patient's malpractice claim against a physician who was director of a medical facility for radiation therapy, the facts appearing in a summary judgment proceeding would not have permitted a jury to find that a consensual doctor-patient relationship existed between the patient and the defendant at the time of the alleged negligent treatment. [333-335]

On a patient's malpractice claim against a physician who was director of a medical facility for radiation therapy, the facts appearing in a summary judgment proceeding would not have permitted a jury to find the defendant liable under a theory of respondeat superior, where the plaintiff, other than alleging that the defendant had "pioneered" the treatment she had received, presented no evidence that he had employed, controlled, or directed her treating physicians or that they were his agents or employees. [335]

On a patient's malpractice claim against a physician who was director of a medical facility for radiation therapy, the facts appearing in a summary judgment proceeding would not have permitted a jury to find the defendant liable under a theory of joint venture for the alleged negligence of two other physicians whom the plaintiff had expressly engaged to treat her as their private patient at the facility. [335-336]

CIVIL ACTION commenced in the Superior Court Department on May 7, 1985.

---

[1]James H. Doherty, Jr., also asserted a claim against the defendant for the loss of care, companionship, services, society, love, affection, and consortium of his wife. We do not treat this claim separately.

[2]The remaining defendants are Irma Levene, administratrix of the estate of Martin Levene, M.D.; Judith Buckley, M.D.; and Beth Israel Hospital.

A motion for summary judgment was heard by *John P. Forte*, J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph D. Regan* for the plaintiffs.

*Susan M. Donnelly* for Samuel Hellman.

ABRAMS, J. The plaintiff appeals from a final judgment entered for the defendant, Samuel Hellman, M.D., after the allowance of his motion for summary judgment. See Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). See also *Blood* v. *Lea*, 403 Mass. 430, 432 (1988). The plaintiff asserts that, because there are genuine issues of material fact whether a doctor-patient relationship existed between the plaintiff and the defendant, and whether the defendant is liable to the plaintiff for the negligence of the other physicians practicing at the Joint Center for Radiation Therapy, it was error to allow the defendant's motion for summary judgment. We transferred the case to this court on our own motion. We affirm.

We summarize the facts. In February, 1980, the plaintiff was diagnosed as having a malignant lump in her breast. It also was determined that her lymph nodes were cancer-free. After the malignant growth was removed, the plaintiff investigated various methods of preventative care. The plaintiff's gynecologist referred her to Dr. Levene, a deputy director of the Joint Center for Radiation Therapy (JCRT).

The JCRT is a joint venture of the Harvard-affiliated hospitals in the Longwood area to provide radiation therapy to patients of those hospitals. The defendant was the director of the JCRT. The director was responsible for development, hiring, and recruiting of the staff and the distribution and function of staff within member hospitals. He also was responsible for the selection, purchase, and function of radiation therapy facilities and equipment within the member hospitals. The director developed the educational activities of medical students, residents, fellows, and technologists. Being director occupied about 25% of the defendant's time. He also had his own patients. The defendant was an expert and

pioneer in the treatment of breast cancer and had published numerous articles on radiation therapy.

The plaintiff consulted with Dr. Levene, who recommended a treatment pioneered by the defendant consisting of radiation therapy and iridium implants. Dr. Levene gave the plaintiff literature and articles on the radiation therapy of the JCRT. According to the plaintiff, Dr. Levene told her that the side effects were minor. The plaintiff decided to follow Dr. Levene's suggested therapy. Dr. Levene remained her primary physician until January, 1981, when he became ill. Thereafter, Dr. Christopher Rose became her primary (treating, caring, or attending)[3] physician.

As a result of the treatment, the plaintiff suffered a number of serious, debilitating complications and permanent injuries and disfigurement. Dr. Rose told the plaintiff he would ask a colleague "who had seen more of this than [Dr. Rose] had" whether he "could elucidate what was to [Dr. Rose] a mysterious effect."[4] At Dr. Rose's request, the defendant agreed to see the plaintiff with Dr. Rose. Dr. Rose and the defendant took a history, performed a physical examination, and told the plaintiff that her skin condition would remain constant; that it would not get any better. Several months later, the plaintiff's condition was determined to be radiation necrosis.

The plaintiff argues that the trial judge erred in entering summary judgment for the defendant and that there is a genuine issue of material fact. She asserts that a jury could find from the facts that (1) the defendant had a doctor-patient relationship with the plaintiff, and that the defendant therefore had a duty to inform her of the risks involved in the radiation therapy she would receive at the JCRT and to ob-

---

[3]On this record, these terms appear to be used interchangeably.

[4]In her affidavit, the plaintiff states that she assumed that the defendant discussed her care with Dr. Rose and that the defendant made suggestions as to her care and treatment. That assumption does not aid the plaintiff. There are no facts in the record which indicate that the defendant consented to make suggestions as to her care and treatment. The defendant agreed to see her with Dr. Rose at her next appointment.

tain her informed consent; and (2) the defendant directed
and controlled the activities of the JCRT staff and students
and is vicariously liable for their negligence in treating the
plaintiff. We do not agree.

Rule 56 (c) of the Massachusetts Rules of Civil Procedure,
365 Mass. 824 (1974), provides that a judge shall grant a
motion for summary judgment "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together
with the affidavits, if any, show that there is no genuine issue
as to any material fact and that the moving party is entitled
to a judgment as a matter of law." "The party moving for
summary judgment assumes the burden of affirmatively dem-
onstrating that there is no genuine issue of material fact on
every relevant issue, even if he would have no burden on an
issue if the case were to go to trial." *Pederson* v. *Time, Inc.,*
404 Mass. 14, 17 (1989). See *Layne* v. *Superintendent, Mas-
sachusetts Correctional Institution, Cedar Junction, ante*
156, 161 & n.6 (1989). See also *Attorney Gen.* v. *Bailey,* 386
Mass. 367, 371, cert. denied sub nom. *Bailey* v. *Bellotti,* 459
U.S. 970 (1982).

1. *Doctor-patient relationship.* The plaintiff alleges that
the defendant was negligent in irradiating her to the point of
causing radiation necrosis. In order to prove her medical
malpractice claim, the plaintiff must show that (1) a doctor-
patient relationship existed; (2) the defendant failed to con-
form to good medical practice; and (3) the defendant's negli-
gence caused Doherty's injury. *Kapp* v. *Ballantine,* 380
Mass. 186 (1980).

The plaintiff acknowledges that a doctor-patient relation-
ship is a consensual relationship. See, e.g., *United Calendar
Mfg. Corp.* v. *Huang,* 94 A.D.2d 176, 179 (N.Y. 1983); *Ly-
ons* v. *Grether,* 218 Va. 630, 633 (1977); *McNamara* v. *Em-
mons,* 36 Cal. App. 199, 204-205 (1939). The plaintiff as-
serts that there are sufficient facts to allow a jury to conclude
that a consensual doctor-patient relationship existed between
her and the defendant. We do not agree.

The plaintiff alleges that the following facts establish a
doctor-patient relationship between Doherty and the defend-

ant: (1) patients of the JCRT were part of an on-going study of the effectiveness of the defendant's technique, thus requiring the defendant to give attention to the care each patient received; (2) the defendant reviewed the progress of the JCRT patients through examination of their charts and daily staff consultations; (3) the plaintiff's treating physician gave her an article describing the defendant's status as director of the JCRT and explained the treatment he pioneered; (4) the plaintiff "assumed" that the defendant was regularly consulted on patient care; (5) the defendant set the standards and designed the treatment that the JCRT patients received; (6) the defendant reported treatment results in the medical literature; and (7) the defendant saw the plaintiff once, after she received the allegedly negligent irradiation treatment, and, together with her treating physician, they took her medical history, examined her, and the doctors said her skin condition would remain constant.

The defendant was consulted *after* the treatment to explain skin changes sustained by the plaintiff as a result of the treatment previously administered. The defendant is not liable for negligent irradiation absent an existing relationship with the patient and her treatment. There are no facts that would warrant a conclusion that a consensual relationship between the plaintiff and the defendant at the time of the alleged negligent treatment.

The plaintiff argues further that as her physician, the defendant owed the plaintiff the duty to fully inform her of the risks inherent in iridium implants and radiation therapy for breast cancer and that he is liable for failure so to inform her. According to the depositions, at the JCRT each doctor has his own patients and informs them of reasonably foreseeable risks and complications and obtains informed consent from them. According to the record before us, Dr. Levene, the plaintiff's treating physician at the time, undertook this duty.

Last, there is no record support for her claim that the defendant agreed to make a diagnosis of her condition or to have her as his patient. The plaintiff has not established any

facts which would permit jurors to determine that a consensual doctor-patient relationship existed between her and the defendant.

2. *Vicarious liability theory.* The plaintiff argues that, even if there was no doctor-patient relationship, the defendant is liable vicariously for the negligence of the treating physicians under a theory of respondeat superior. The plaintiff maintains that the JCRT physicians negligently performed the treatment pioneered by the defendant and they acted as the defendant's agents in administering the treatment to the JCRT's patients.

The plaintiff asserts that summary judgment was not appropriate since a jury could conclude that the defendant directed and controlled the activities of the JCRT physicians who administered radiation therapy to the JCRT patients, including the plaintiff. The plaintiff's claim rests simply on the basis that, "as the Director of the [JCRT], [the defendant] had a duty to monitor [the plaintiff's] care." The plaintiff acknowledges that *Campbell* v. *Thornton,* 368 Mass. 528, 535 (1975), protects the defendant from vicarious liability solely because he was director of the JCRT.

The plaintiff asserts that *Campbell* allows vicarious liability to be imposed on the defendant because (1) he pioneered the treatment she received; (2) he was called in to examine her and diagnose her complication; (3) he actively planned the JCRT patient therapy; (4) he was consulted regularly on patient care; and (5) he was responsible for educating the treating physicians and staff. The defendant never saw the plaintiff during her treatment, and she presented no evidence showing that he employed, controlled, or directed her treating physicians during her care or that they were his agents or servants. We reject the implication in the plaintiff's brief that a doctor who "pioneers" a new therapy and writes articles on the new therapy is thereby liable to malpractice claims for any untoward result suffered by patients following the new therapy with their own physicians.

The plaintiff also urges this court to adopt a joint venture theory of liability found in two New York opinions and hold

that it is a jury question to determine whether a doctor who did not directly participate in the care complained of, but who did practice with other doctors under a collective name, might be liable vicariously for negligence of other doctors in the same practice. The plaintiff argues that, under this theory, a jury could have imputed any negligence of her JCRT treating physicians to the defendant, the director of the joint venture.

The New York opinions do not help the plaintiff. In *Ruane* v. *Cooper*, 127 A.D.2d 524 (N.Y. 1987), three doctors practicing at the Institute of Neuroscience allegedly held themselves out to the public as a joint venture. The plaintiff in *Ruane* was a patient of the Institute itself. He did not engage any particular doctor to treat him and the doctors did not have private patients of their own. *Id.*

Similarly, in *Lanza* v. *Parkeast Hosp.*, 102 A.D.2d 741 (N.Y. 1984), the doctors practiced under a collective name; their literature did not include the names of any particular doctors and referred to the group practice collectively; and the plaintiff went to the group's facility, did not ask for any particular doctor and did not know the name of the doctor who performed the procedure. *Id.* The JCRT treating physicians, including the defendant, had their own private patients. The plaintiff expressly engaged Dr. Levene, and later Dr. Rose, to treat her.

*Judgment affirmed.*